## THE DELAWARE, LACKAWANNA AND WESTERN RAIL-ROAD COMPANY v. WALTER B. HARDY.

1. A general servant of one person may, for a particular work or occasion, become, *pro hac vice*, the servant of another person, so that the latter will not be liable to him for an injury occasioned by the negligence of other servants engaged with him in a common employment.

2. To establish the relation of master to such a servant it must appear that the servant has, expressly or by implication, consented to the transfer of his services to the new master and to accept him as his master *pro hac vice*, and has entered upon such service and submitted himself therein to the direction and control of the new master.

On error to Essex Common Pleas.

Argued at February Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiff in error, *Flavel McGee.*

For the defendant in error, *Thomas N. McCarter, Jr.*

The opinion of the court was delivered by

MAGIE, J. The bills of exceptions show the following undisputed facts:

The Passaic Rolling Mill Company contracted with the Delaware, Lackawanna and Western Railroad Company, the plaintiff in error, to furnish at a specified price the materials for rebuilding certain railroad bridges of the latter company and also skilled workmen to erect such bridges. The workmen furnished were such as had previously been in the employ of the rolling mill company. They continued to be paid by that company, but after payment the amount paid, with some percentage added, was repaid by the railroad company. The work was to be done under the direction of engineers of the railroad company but foremen of gangs were among the workmen furnished.

Hardy, the defendant in error, was a workman furnished under the contract. While a bridge in the vicinity of the station at Newark was being rebuilt, employes of the railroad company drew a train upon it from the west, detached the locomotive, which passed on to the east, and left the train standing without any locomotive attached. Hardy was at that time directed by a foreman to drive in some wedges to wedge up the falsework. In doing this he stood beside and below the train, with his left hand grasping one of the rails of the track and his right using a mallet. While in this position a locomotive engineer of the railroad company backed a locomotive down from the west. Other employes attached it to the standing train, which was then drawn by it toward the west. The wheels of the train passed over Hardy's left hand, injuring him permanently.

It is now contended that there was error in the refusal to nonsuit and in the refusal to direct a verdict for the railroad company. This contention is first put upon the claim that the evidence showed beyond dispute that Hardy and the engineer who drove the train which injured him were engaged at the time in a common employment and servants of the railroad company, so that the company was not liable for the engineer's negligence.

When this action was first tried the trial court nonsuited the plaintiff, holding that, upon the evidence then before it, the relation of common service between him and the engineer of the railroad company was established. The ruling was made on the authority of *Ewan* v. *Lippincott,* 18 *Vroom* 192. Upon error, this court reversed the judgment and held that upon the evidence it should have been left to the jury to determine whether Hardy was in the employ of the railroad company. *Hardy* v. *Delaware, Lackawanna and Western Railroad Co.,* 28 *Vroom* 505. The judgment of the Supreme Court was afterwards affirmed in the Court of Errors, and is reported in 29 *Id.* 205.

Afterwards the record was remitted, a *venire de novo* issued and the action again tried. It is the record of that trial which

is now before us. If the evidence in these bills of exceptions is identical with that which was before the court upon the former review, it is obvious that the same result must be reached. But it is claimed on the part of the railroad company that the case made on this trial so differs from that made on the former trial that the submission of the question of common service to the jury was not required by what was adjudged in the former case in this court or the Court of Errors. This renders necessary a consideration of the whole case.

The doctrine of collaborateur, as it is sometimes called, is this: A master who would be liable for an injury inflicted by the negligence of one of his servants upon a stranger, will not be liable for a like injury inflicted upon another of his servants engaged at the time in a common employment with the negligent servant. To establish the immunity of the master, two things must appear—*first*, that the person injured and the person doing the injury were his servants, and *second*, that they were both at the time engaged in labor for him tending to a common purpose, which is to be in a common employment.

In a majority of cases, the first of these requisites is made out by proof that both the person injured and the person doing the injury were engaged and employed as servants, were paid for their services and were directed and controlled therein by one and the same person. Usually the contest is over the other requisite of common employment.

But in the class of cases of which that before us is a sample, the contest is over the establishment of the relation of service. Doubtless, no man can serve two masters, yet the law clearly recognizes a sort of duality of service. A general servant of one person may, for a particular work or a particular occasion, become, *pro hac vice*, the servant of another person. What will suffice to prove the assumption of the dual service gives rise to question. I think the applicable rule is admirably expressed by Lord Watson thus: "I can well conceive that the general servant of A might, by working towards a com-

mon end along with the servants of B, and submitting himself to the control and orders of B, become, *pro hac vice*, B's servant in such sense as not only to disable him from recovering from B for injuries sustained through the fault of B's proper servants, but to exclude the liability of A for injury occasioned by his fault to B's own workmen. In order to produce that result the circumstances must be such as to show conclusively that the servant submitted himself to the control of another person than his proper master, and either expressly or impliedly consented to accept that other person as his master for the purposes of the common employment." *Johnson* v. *Lindsay*, 1891 *App. Cas.* 371.

To establish the fact that the servant of one has thus transferred his services to another *pro hac vice*, it must appear that he has assented, expressly or impliedly, to such transfer. No one could transfer the services of his servant to another master without the servant's consent. It must further appear that the servant has, in fact, entered upon the service and submitted himself to the direction and control of the new master. His assent may be established by direct proof that he agreed to accept the new master and to submit himself to his control, or by indirect proof of circumstances justifying the inference of such assent. Such evidence may be strong enough to justify a court in removing the question from the jury, or it may require to be submitted to the jury.

The case of *Ewan* v. *Lippincott, ubi supra*, has, as I conceive, been misunderstood. It falls within the rule above stated. It came to this court upon a rule to show cause. It appeared in the case that Ewan was a machinist, employed by D. & W., master machinists. Lippincott was a mill-owner, who employed D. & W. to alter the gearing of a wheel. D. & W. sent Ewan to do the work, and he and Lippincott arranged how it was to be done, and particularly that, at times when Ewan was not at work on the wheel, it should be run by Lippincott's engineer, to furnish power for the mill. The trial judge charged that, upon this evidence, Ewan and the engineer (whose negligence had injured Ewan) were not

servants of a common master. Obviously, this ruling was erroneous, if the evidence either established, or tended to establish, that they were fellow-servants. In the former case, a nonsuit should have been granted; in the latter case, the question should have been submitted to the jury. The verdict was set aside and a new trial granted. The opinion of Mr. Justice Reed clearly indicates that, in his view, the evidence established the co-service of Ewan and the engineer, and in that opinion I concur. But it is unnecessary to go so far, in order to support that case, for there was clear evidence from which a jury might infer that Ewan had assented to the transfer of his services to Lippincott and submitted therein to his control.

The much-discussed case of *Wiggett* v. *Fox,* 11 *Exch.* 832, was cited and relied on by Mr. Justice Reed, and in my judgment exhibits the application of the same rule. The jury had found that the injured person was in the employment of a sub-contractor, and not of the defendant, who was the general contractor for the building of the Crystal Palace. The reviewing court having found that the evidence established that the sub-contractor and his men (including the plaintiff) had submitted themselves to the control of the general contractor and accepted him as their master, set the verdict aside and directed a nonsuit. The case was thus explained by Baron Channell, though Lord Cockburn doubted whether the facts were correctly stated. *Abraham* v. *Reynolds,* 5 *Hurlst. & N.* 143; *Rourke* v. *White Moss Colliery Co.,* 2 *C. P. Div.* 205. Later English cases show the application of the same rule. *Johnson* v. *Lindsay,* 23 *Q. B. Div.* 508; *S. C.,* 1891 *App. Cas.* 371; *Cameron* v. *Nystrom,* 1893 *Id.* 308.

After examining the evidence, I have reached the conclusion that there was no error, or at least none injurious to the railroad company, in submitting to the jury the question whether Hardy, at the time of his injury, was in its employ. He had been employed by the rolling mill company and continued to be paid by their paymaster and to be directed in his

work by their foremen. The agreement between that company and the railroad company that the engineers of the latter should control the work was not made known to him nor was there a particle of proof that such engineers exercised such control in Hardy's presence or within his knowledge as to justify an inference that such control existed. Indeed, it is open to serious question, in my judgment, whether the trial court might not have justly directed the jury that there was no sufficient evidence of Hardy's assent to the transfer of his services or acceptance of the railroad company as his master.

The contention that there was error in refusing to nonsuit or to direct a verdict is next put upon the ground that there was no evidence of negligent management of the train which injured Hardy. But this contention cannot prevail. The railroad company had arranged to rebuild its bridges while using them for the passage of its trains, and in this case for drilling a train. This use rendered the situation of all workmen employed on the bridge exceedingly perilous. That there was cast upon the company a duty to take such reasonable care for the safety of those workmen as the extraordinary circumstances made requisite, and that for the want of such care by its servants it would be liable, are propositions not open to discussion. There was evidence from which may be inferred the want of reasonable notice to workmen who might be exposed to peril thereby, of the movement of this train.

The contention is next put upon the ground that the evidence conclusively established negligence on the part of Hardy contributing to his injury. Reliance is placed upon the fact that he unnecessarily grasped the rail under a car in such a position that the movement of the car would crush the hand which grasped it. There was proof that by the use of planks, which were provided, Hardy's work could have been done without the least risk. If that evidence stood uncontradicted, a different question would be presented. But Hardy testified that he could not have driven the wedges by the use of the planks nor without supporting himself by his left hand, and that the only thing that his hand could grasp to support him

was the rail. Hardy was engaged in a dangerous employment. His duty, undoubtedly, was to take reasonable care not to expose himself to unnecessary risks. Whether or not he could have done his work by the use of the planks without risk, and whether or not he exercised the required care for his safety in placing his hand on the rail under a train which had no motive power attached, and retaining it there, in the absence of notice that the locomotive had been attached to it and was about to move it (for that was the case made by his evidence), were clearly questions for the jury, and it was no error to submit them for their determination. Whether their verdict was against the weight of evidence cannot be considered.

Other assignments relate to alleged errors in the admission or rejection of evidence. None of them were much urged in argument, and upon examination no error is discovered in any of the rulings objected to.

Let the judgment be affirmed.