CHARLES NORMAN, PLAINTIFF IN ERROR, v. THE MIDDLESEX AND SOMERSET TRACTION COMPANY, DEFENDANT IN ERROR.

ISABELLA CHEVALIER, PLAINTIFF IN ERROR, v. THE MIDDLESEX AND SOMERSET TRACTION COMPANY, DEFENDANT IN ERROR.

Submitted December 5, 1904—Decided March 20, 1905.

Norman, the plaintiff, was in the employ of one Lesher, who was repairing the road of the defendant, under a contract with defendant, and while plaintiff was engaged in propelling a car over defendant's road, in the service of Lesher, a car of defendant collided with that car and injured plaintiff, the collision being due either to the fact that the servant on the car preceding that on which plaintiff was failed to warn defendant's servant driving the colliding car, or. else that servant failed to heed the warning and wait on switch. *Held*, that the direction of a verdict for defendant, on the ground that the employes of Lesher and the employes of the defendant were all operating cars over the line of the defendant, and hence were, in the operation of the cars, all fellow-servants, was error.

On error to the Middlesex Circuit Court.

These suits were tried together at the Circuit.   In the first the plaintiff sought to recover damages for injuries alleged

to have been sustained by him by reason of the negligence of the Middlesex and Somerset Traction Company, and in the second the plaintiff, the mother of said Norman, sought to recover for the loss of earnings in consequence of the same injury.

The accident in which Norman was injured took place on the 16th of January, 1901, and while he was acting as a trolley boy on a motor car, which was drawing a construction car engaged in repairing the road of the defendant. Norman was fourteen years old at the time of the injury and had been working on this car since the first of the previous November. This construction car, in connection with the motor car, had been employed in carrying material for repairing the tracks throughout the system of the trolley company, and for two weeks before the accident in getting crushed stone at Dunellen and taking it over on the Metuchen line, where they were repairing the tracks. In order to secure a clear track for the running of this construction car it was the custom, as stated by the motorman, to follow a regular passenger car, and to inform either the motorman or conductor of such passenger car where they were going, so that they would notify the car that they met on the switches that the construction car was coming, in order that such car would wait until the construction car had passed.

On the day of the accident it appeared that one Eick, who was the motorman of the construction car, gave, at New Brunswick, to one De Hart, the conductor of the passenger car, the notice that he was going to follow him to Bound Brook, and the conductor replied "all right." This notice he had given on previous occasions to the conductor or motorman of that car, whichever one he saw. And the giving of this notice was heard by the plaintiff, Norman. After De Hart's car started the construction car followed it and kept it in sight for some distance, but the morning being foggy it passed out of sight; when about a mile above the Landing bridge, a collision occurred between the construction car and a passenger car coming from Bound Brook, causing the injury to the plaintiff.

654    COURT OF ERRORS AND APPEALS.

Norman v. Middlesex and Somerset Trac. Co.    71 *N. J. L.*

The firm of T. M. Lesher & Son were doing the repair work to the roadbed of the defendant, under an agreement not in writing, by which the firm agreed to do the work on a percentage basis, the company to pay the costs and to pay ten per cent. over the cost of the material and labor.

The plaintiff was employed as a motor boy by Dayton, one of the foremen of Lesher & Son; he was paid by the firm and carried on their pay-rolls, and he had been originally employed on the original construction of the road, and had been carried along from beginning to end on the pay-roll as one of the employes of the firm. It appeared that the plaintiff went on the trolley car, first, under the direction of one of the foremen of Lesher & Son, and while so employed received his orders from Eick, the motorman of the car, and it also appeared that the boy never did any work of any kind in respect to the repair work or other work on the property of the defendant company, except the work in charge of Lesher & Son.

The flat car used for carrying the stone was built by Lesher for his use, he using, by permission of the defendant, one of the old trucks of the company; the company furnished a motor car to pull the flat car and assigned Eick to it as motorman, he taking, as he testified, all his orders either from Lesher or his men; the car being, as Lesher stated, subject to his orders in doing this work. He admitted that it might have been taken for use by the company when he was not using it, but that it would not be done if he wanted it.

At the close of the testimony the trial judge directed the jury to find a verdict for the defendant.

For the plaintiff in error, *Alan H. Strong.*

For the defendant in error, *Willard P. Voorhees.*

The opinion of the court was delivered by

VROOM, J. This was the second trial of this case at the Circuit. At the first trial the jury was directed to find a verdict for the plaintiff, and on the removal of the case to

this court by writ of error it was held that this direction was manifestly wrong, for at the trial there was no question but that the collision injured the plaintiff and was the result of negligence on the part of the defendant company, and that the question tried was whether the plaintiff was not also in the employment of the same company, so that the negligence by which he was injured was that of a fellow-servant. The *per curiam* opinion then said that there were two views that could be taken of the evidence—one, that Lesher, who employed and paid the plaintiff, acted, in so doing, as the mere agent of the defendant company; the other, that Lesher had some contract with the defendant company respecting the repair of its tracks, and having employed the plaintiff in respect to his business, had transferred plaintiff's services *pro hac vice* to the defendant company, with plaintiff's consent; and that there should have been a submission to the jury whether there had been such transference of services with plaintiff's consent. *Norman* v. *Middlesex and Somerset Traction Co.,* 39 *Vroom* 728.

When the case came on for trial the second time the evidence was practically the same as at the first trial, with the exception that the plaintiff was able to secure the evidence of Lesher, whose testimony showed that he had the entire direction and superintended the repair work, mostly personally, and had as his assistant Hughes, who was also his timekeeper. He further testified that he paid for the stone to be used in the repair work, and sent the car to be loaded directly off the wagons which delivered it. He further stated that he gave to Eick, the motorman, the orders as to the running of the car, but admitted that Eick was not paid by him. At the close of the case a motion was made to direct a verdict for the defendant, and, disposing of the motion, the trial judge said that it must be conceded that Lesher & Son were independent contractors, and that the plaintiff, Norman, was the employe of that firm, and that Eick, the motorman, in all that he did for Lesher & Son, was a fellow-servant of the employes of Lesher & Son. He, however, granted the motion, on the ground that the risks incident to the operation of the

656    COURT OF ERRORS AND APPEALS.

Norman v. Middlesex and Somerset Trac. Co.    71 N. J. L.

car were risks of the business of Lesher & Son, and all such risks the plaintiff, Norman, must be held to have assumed as an incident of his employment; that in the operation of the car under the system of notice, Lesher & Son's servants and the defendant's servants were engaged in the same line of work—all in the work of a common nature, and all subject to the risks incident to the failure to observe the custom. The work of the employes of the defendant was the work of the defendant company. They were all operating cars over the line of the defendant company, in the defendant's work, about the defendant's business, and were in that employment in operating the cars, all fellow-servants in that particular respect. In that condition, among the risks assumed and incident to the business, were the risks resulting from the negligence of the servants of the defendant.

The difficulty with this instruction to the jury is that it ignores entirely the two questions that were distinctly held by this court to be matters which should be submitted to the jury, and, as contended by the plaintiff in error, rendered immaterial the fact whether Lesher was an independent contractor or merely a foreman or agent of the defendant company, and whether there had been a transference of plaintiff's services, with his consent.

To assume, as was done by the trial judge, in order to warrant the direction of a verdict for the defendant, that the plaintiff and the servants of the defendant were, under the evidence, all fellow-servants of the company, and that all were operating cars over defendant's road, and about defendant's business, was error; and this seems the more apparent, independently of taking so vital a question from the jury, from the fact that the trial judge had distinctly stated that there was proof from which the jury might find that Lesher & Son were independent contractors, and that the plaintiff was an employe of that firm.

It does not seem to me to admit of any doubt but that, under the evidence, the jury could have found that in the doing of the work Lesher & Son were independent contractors, and also that the plaintiff was exclusively in the

employ of Lesher & Son, and not in that of the defendant company. Whether the services of the plaintiff had been transferred by Lesher *pro hac vice* to the defendant, with the plaintiff's consent, was also, as pointed out in *Norman* v. *Middlesex and Somerset Traction Co., supra,* an important question. This transference can be established only by showing that the plaintiff assented, expressly or impliedly, to the transfer, and, as held in *Delaware, Lackawanna and Western Railroad Co.* v. *Hardy,* 30 *Vroom* 35, "it may be established by direct proof that he agreed to accept the new master and to submit himself to his control, or by indirect proof of circumstances justifying the inference of such assent."

The judgment below should be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDEN-BURGH, VROOM, GREEN. 11.