GIROLMO SOLARI *vs.* WILLIAM L. CLARK & another.

Suffolk.　November 16, 1904. — January 5, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence,* Employer's liability.

It is the duty of the superintendent of a contracting mason, who as such superintendent has charge of the construction of a staging surrounding a large chimney in process of construction for the workmen to stand upon in laying bricks, the floor of which has to be raised from time to time as the work proceeds, not to allow the staging to be used at a height of twenty-five or thirty feet above the ground until he has used due diligence to see that it is constructed and secured properly, and if he fails to observe that a putlog supporting the floor of the staging does not rest on a ledger board but rests on an insecurely nailed stay in which there is a knot, and if a workman is injured by the falling of the staging as he goes upon it in carrying up a hod of bricks, the workman in an action against his employer may go to the jury upon the question of the negligence of the defendant's superintendent.

TORT by a workman against his employer, a contracting mason engaged in constructing a large chimney for the Somerville Electric Company at Somerville, for personal injuries from the falling of a staging as the plaintiff went upon it in carrying up a hod of bricks, with six counts, of which the sixth alleged that the injuries were caused by the negligence of a person in the service of the defendant entrusted with and exercising superintendence. Writ dated December 27, 1900.

At the trial in the Superior Court before *Holmes,* J., the judge required the plaintiff to elect upon which count he would go to the jury, and the plaintiff elected the sixth count charging negligence of the defendants' superintendent, whereupon the judge ordered a verdict for the defendant upon the first five counts. The judge refused to order a general verdict for the defendant, and submitted the case to the jury on the sixth count. The jury returned a verdict for the plaintiff in the sum of $3,700; and the defendants alleged exceptions.

*G. W. Buck,* for the defendants, submitted a brief.

*F. R. Bangs,* for the plaintiff.

BARKER, J. The defendants employed the plaintiff and others in constructing a large circular tower of brick which at the time of the accident had been built up some twenty-five or thirty feet above the surface of the ground. A staging of lumber was used to support the masons and the brick and mortar which they were to use. The staging was planned by one Moore, who upon the evidence could have been found to have been a superintendent within the meaning of R. L. c. 106, § 71. As the tower was built higher it became necessary from time to time to place and support at a higher level the planks which formed the floor of the staging. These planks rested on joists called putlogs which at one end were built into the brick work of the tower and at the other rested upon boards nailed to the upright posts of the staging. There were two classes of boards so nailed. One class was nailed to the inside of the uprights and were called ledger boards, and there was evidence tending to show that they were designed to hold up the putlogs on which the planks which constituted the floor of the staging rested. The other class were called stays, and there was evidence tending to show that their only office was to keep the uprights in

their perpendicular position, although there was perhaps some evidence that the stays also supported the putlogs. Soon after the floor of the staging had been raised for the third or fourth time, as the plaintiff was upon it in the course of his work the staging broke and he was thrown to the ground. It is conceded that he was in the exercise of due care and that due notice was given under the statute. At the trial he elected to rely upon the sixth count of his declaration, and the judge directed a verdict for the defendant upon all the other counts, refused to direct such a verdict upon the sixth count, and left that count to the jury, who found upon it for the plaintiff. The case is here upon the defendants' exception to the refusal of the judge to order a verdict for them upon the sixth count, and the question for decision is whether there was evidence from which it properly could be found that the fall of the staging was the result of negligence of Moore in exercising superintendence.

It is plain that the staging was not one of those which the masons employed upon a job of brick work are expected to build for themselves. On the other hand it also is plain that enough proper materials were furnished and kept on hand by the defendants for the construction of the staging. It fairly could be found from the evidence that the work of building the staging originally and of raising it whenever necessary was in charge of Moore the foreman, who also worked with his own hands, but at whose orders the plaintiff, and other ordinary workmen of his class, made excavations, handled lumber, or carried brick or mortar as Moore told them to do. It also could be found that the most of the manual labor of erecting and of raising the staging was done by Moore and by a workman named Gardella, described in the defendants' brief as the "handy-man" of the gang. The other common laborers as they were ordered at times brought boards for the staging to Moore and Gardella, and sometimes when the planks were to be raised to the next higher level the masons themselves helped pull them up. The evidence tended to show that the plaintiff was the first common laborer sent to take up bricks after the staging had been raised to the height where it was when the accident occurred, and that it happened as he was upon the staging with his third or fourth load.

It also could be found that at the point where the staging gave way the outer end of a putlog, instead of being placed upon the ledger board, had been placed improperly upon a stay, and that the stay had been fastened to the upright with only two nails instead of a greater number, and that the nails had been so driven as to tend to split the stay, and that there was a knot in the stay. The theory of the accident is that the strain brought to bear upon the stay caused it to split, letting down the putlog and the floor of the staging. We think the evidence would not justify a finding that the knotty board was selected or nailed in position or the putlog placed upon it by Moore rather than Gardella. But we also think that it fairly can be found from the evidence that it was a part of the duty of superintendence resting upon Moore not to allow the staging to be used at the height to which it had just been raised until he had used due diligence to see that it was properly assembled and secured, and that the accident resulted from negligence on his part in failing to observe that the putlog did not rest on a ledger board and did rest on an insecurely nailed stay in which was a knot.

*Exceptions overruled.*