PATRICK SULLIVAN *vs.* RANSOM ROWE & another.

Suffolk.    January 22, 1907. — February 28, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* In maintaining trench machine, *Res ipsa loquitur.* *Practice, Civil,* Exceptions, Judge's charge. *Evidence.*

The falling on the head of a man, who is working in a sewer in process of construction, of an iron buffer suspended on the rod of a Carson trench machine and used to control the passing of the excavating buckets can be in itself evidence of negligence.

In an action by a workman against his employer for personal injuries from an iron buffer of a Carson trench machine, which was suspended over a sewer in process of construction, falling on his head while he was working in the trench, if the circumstances are such that the falling of the buffer is in itself evidence of negligence, the fact that the plaintiff has introduced evidence in attempting to show why it fell does not preclude him from relying on the doctrine of *res ipsa loquitur,* which entitles him to go to the jury on showing that the accident happened.

On an exception to a particular portion of the charge of a presiding judge, this court will consider all of the charge which appears by the record, to determine whether the instructions to the jury taken as a whole were correct on the point to which the exception relates.

In an action by a workman against his employer for personal injuries from an iron buffer of a Carson trench machine, which was suspended over a sewer in process of construction, falling on his head while he was working in the trench, the plaintiff may show the condition immediately after the accident of the bolt from which the buffer was suspended. .

TORT for personal injuries incurred on June 15, 1904, while in the employ of the defendants, who were contractors engaged in digging a trench for a drain, from being struck on the head by an iron buffer which dropped from a Carson trench machine while the plaintiff was at work beneath it assisting in shoring up a trench eighteen feet in depth. Writ dated July 16, 1904.

In the Superior Court the case was tried before *White*, J. A Carson trench machine ordinarily is used in excavating ditches for sewers. The machine in use at the time and place of the accident had been in operation about two months on this particular job. In this machine at the time and place of the accident six buckets were suspended from and ran along an iron rail laid on a girder supported by wooden legs about fifteen feet in height. The buckets could be raised and lowered into the ditch by means of a tail rope, which ran through pulleys to the drum of the engine. In order to prevent the buckets from running along the rail beyond the desired point a device known as a buffer iron was used. A buffer consists of two tongues of iron each about twenty-one inches long, three inches wide and three-quarters of an inch thick, and swings on a three-eighths or one-half inch pin or bolt driven through the girder, being so arranged that when it is swung upward on the pin by means of a rope, the buckets can pass along the rail, but when it is dropped the tongues prevent the buckets from passing and hold them stationary at the desired point. This pivot or bolt upon which the tongues of the buffer iron are suspended extends beyond the girder on either side, and is kept in place by small two-pronged steel pins, called split keys or cotter-pins, which pass through holes in the pivot bolt on each side of the girder. A buffer weighs about seven pounds. These tongues besides being secured on the bolt by the split key also are secured to each other and to the overhead rail by a rope which passes through each of the tongues and over the overhead rail. There was evidence that on the day that the plaintiff was injured there was no rope connecting and securing the tongues of the buffer, and that the purpose, or one of the purposes, of this connecting rope was to prevent the tongues from falling into the trench in case the key came out.

One Carroll, who was the defendants' foreman in charge of

the work in which the plaintiff was employed at the time of the accident, was called as a witness by the plaintiff, and testified that there was no rope on the machine on the day the plaintiff was hurt, that he examined the machine immediately after the accident and there was no rope connected with the buffer at that time. He then was asked the question: "What was the condition of the bolt from which this buffer iron was suspended, at the time you examined — of the bolt passed through the girder, from which the buffer iron was suspended?" This question was objected to by the defendants and was admitted by the judge subject to the defendants' exception. The question was repeated in the following form: "Now, Mr. Witness, I wish you would describe the condition in which the bolt was immediately following the accident and before the machine was again put in operation at the end of these five minutes you speak of." The witness answered: "Of course I don't know in what condition the bolt was before the accident happened, for I hadn't examined the machine; but after the accident had happened, and we went to put the buffer up again, I found that the main pin that come through the wooden girder had gone to my left, as I am turning this way, and we had to get a striking hammer to turn it back."

At the close of the plaintiff's evidence and again at the close of all the evidence the defendants asked the judge to rule that the plaintiff was not entitled to·recover and to order a verdict for the defendants. This the judge refused to do.

The defendants also asked for other rulings of which the fifth was as follows: "The mere happening of the accident is no evidence of negligence on the part of any one. The facts shown do not constitute a case where the doctrine of *res ipsa loquitur* applies." The judge refused to make this ruling.

· A portion of the judge's charge was as follows: "Was there anything that the defendants could have done that they did not do, by the way of inspection or by way of guarding against that accident, which could have prevented it?

"Now, the law says that the jury shall not found a verdict for a plaintiff upon a mere guess; when the plaintiff has only introduced evidence which leaves the jury to conjecture — a guess — as to the way it happened, then the plaintiff has not

sustained the burden of proving the facts necessary to enable him to recover. That is, there must be such a high degree of probability that men would act upon it, that this happened from the negligence of the defendant rather than from any other causes that are consistent with his due care. And if you are left entirely in doubt as to the matter, why, then the plaintiff has not sustained the burden of proof, and the verdict should be for the defendant. If he has sustained the burden of proving to you by way of exclusion that according to the high probabilities of the case this accident happened by the negligence of the defendant, why, then he may be said to have sustained the burden of proof."

At the end of the charge the judge said: "You will take this matter and give it your careful consideration. If you find the plaintiff has sustained the burden under the circumstances I have suggested to you, you will assess his damages and give him fair compensation for such injury as he has received; and if you find that he has failed to sustain the burden and has so placed it before you that you are left to a mere guess — if he hasn't gone farther than that, then the defendant is entitled to your verdict."

The jury returned a verdict for the plaintiff in the sum of $12,500, of which the plaintiff afterwards remitted all in excess of $6,250. The defendants alleged exceptions to the admission of the evidence above described, to the refusal of the judge to make the rulings requested by it, and to the first paragraph and a part of the second paragraph of the portion of the charge above quoted as stating the rule in regard to the burden of proof incorrectly.

*E. K. Arnold,* for the defendants.

*J. J. Irwin,* for the plaintiff, was not called upon.

LORING, J. In our opinion the falling of the buffer was under the circumstances in itself evidence of negligence. This disposes of the fifth request and also of the request that the jury be directed to find for the defendant. Although the plaintiff in his evidence went beyond showing that the buffer fell, he did not go far enough to deprive him of the case made by the falling of the buffer. The case in this respect comes within *Cassady* v. *Old Colony Street Railway,* 184 Mass. 156.

Taking the instruction as a whole, it is not subject to the complaint now made, that the jury were not properly instructed as to the burden of proving negligence.

Evidence of the condition of the bolt immediately after the accident was admissible.

*Exceptions overruled.*