CATHERINE B. DOE, administratrix, vs. BOSTON AND
WORCESTER STREET RAILWAY COMPANY.

Norfolk.    January, 21, 22, 1907. — April 2, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence.    Street Railway.    Proximate Cause.    Practice, Civil,* Exceptions,
Judge's charge.

In an action by the administrator of the estate of a motorman against the street
railway company by which he was employed, for injuries resulting in his death
and conscious suffering, caused by the collision of the car operated by the plain-
tiff's intestate with another car of the defendant coming from the opposite
direction on the same track, if there is evidence from which it could be found
that when the intestate started his car on the single track the " starter " in
charge had given him a clear right of way to the first turnout, that when in-
jured he was running on his regular time and was passing around a corner at a
rate of speed that was not excessive, that owing to the curve the intestate could
not see the car approaching from the opposite direction until it was so near
that a collision was inevitable, that his car had the right of way, and that he
had no reason to apprehend that at that time a car would be passing over the
track from the opposite direction at the place of the collision, the question
whether the plaintiff's intestate was in the exercise of due care is for the jury.

In an action by the administrator of the estate of a motorman against the street
railway company by which he was employed, for injuries resulting in his death
and conscious suffering, caused by the collision of the car operated by the
plaintiff's intestate with another car of the defendant coming from the opposite
direction on the same track, due to the alleged negligence of a person in the
service of the defendant entrusted with and exercising superintendence, it ap-
peared that the conductor of the car which came from the opposite direction,
upon reaching the turnout at the end of the double track upon which he had
been running and before entering upon the single track upon which the acci-
dent occurred, in accordance with the defendant's regulations called up by tele-
phone the "dispatcher," who, at an office about seven and a half miles distant
from the turnout, had authority to direct from that end the running of cars on
the single track.    This conductor testified that, after he had given to the de-
spatcher his name and that of the motorman of his car and had reported their
arrival at the turnout and the direction in which they were going, he received
the order " All right to White's Corner," and, after repeating the order to the
despatcher, who made no further reply, he also repeated it to the motorman,
and their car then started from the turnout upon the single track, where after
running a short distance the collision occurred.    It further appeared that this
conductor before telephoning examined the register kept at the booth at the
turnout, which showed that only two cars from the opposite direction had
passed when three should have been recorded, as it was the duty of the con-
ductor and motorman of each car to stop and register before passing to the
single track.    The rules of the company provided that under such conditions

a car should not leave the double track until the third car from the opposite direction had passed without a "written order," meaning an order written out by the conductor who received it by telephone.   There was no evidence of such a written order, but it was shown that the despatcher knew that the third car had not passed, as the conductor had given him only the names of the conductor and motorman on the second car, which appeared as the last entry on the register.   *Held,* that there was evidence of negligence on the part of the despatcher under whose order the car proceeded, it being his duty before giving this order to take every reasonable precaution to ascertain whether three cars had passed and to foresee that relying upon his special order the conductor and motorman might proceed notwithstanding the rules, and that the jury might find that his negligence was the efficient cause of the collision, even if the accident would not have occurred had the conductor and the motorman observed the rules.

On an exception to a specific portion of the charge of a presiding judge this court will examine the instructions as a whole to determine whether the jury have been misled by erroneous statements of the law.

Tort by the administratrix of the estate of Edward V. Doe under R. L. c. 106, § 71, cl. 2, § 72, for injuries resulting in the death after conscious suffering of the plaintiff's intestate while a motorman in the employ of the defendant, caused by the collision of the car operated by the plaintiff's intestate with another car of the defendant due to the alleged negligence of a person in the service of the defendant entrusted with and exercising superintendence.   Writ dated January 10, 1905.

In the Superior Court the case was tried before *Lawton,* J., who refused to order a verdict for the defendant or to give certain instructions requested by the defendant, and submitted the case to the jury.   The jury returned a verdict for the plaintiff in the sum of $4,500, of which they apportioned $3,500 for the death and $1,000 for conscious suffering.   The defendant alleged exceptions, of which those that were argued by the defendant raised the questions stated in the opinion.

*E. K. Arnold,* for the defendant.

*H. S. Dewey,* for the plaintiff.

BRALEY, J.   Of the various exceptions taken by the defendant to refusals to rule as requested, and to the instructions given, only two have been argued, and the others must be considered as waived.   Its first contention is, that the plaintiff's intestate was not in the exercise of due care.   The decedent was a motorman in the defendant's employment, and at the time of the accident was in charge of a west bound car, which came into collision

with a car going east, by which he suffered injuries ultimately causing his death. It appeared by his declarations put in evidence during the testimony of his widow, that when he left White's Corner in the town of Southborough the "starter" in charge "had given him a clear right of way to the Washington Street turnout," and that when injured he was "running on his regular time." Acting under this order he went forward, and just before the collision the car passed around a curve at a speed variously estimated by himself and other witnesses as from ten to forty miles an hour. His declarations contained the further statement that he did not see the east bound car until it was in such proximity that a collision was inevitable. But while running rapidly, and unable to ascertain whether the track was clear until he passed the apex of the curve, under the defendant's system of operating this portion of its railway, it could have been found that the decedent's car had the right of way, and that he had no reason to apprehend that at the same time an east bound car would be passing over the track at this place. When employed at his usual work, and acting under the assurance or order of the person charged by the defendant with the duty of seeing that the track was clear between the points, the deceased had a right to presume that he could proceed safely. If the track properly was supposed to be clear, the jury could find that the rate of speed was not excessive, and that his conduct while operating the car in the ordinary way, as he appears to have been doing, was not careless. It plainly could not have been ruled as matter of law that he was negligent, and this question was an issue of fact for their determination. *Nagle* v. *Boston & Northern Street Railway*, 188 Mass. 38.

By R. L. c. 106, § 71, cl. 2, under which the action is brought, the defendant is responsible for the negligence of those to whom it had given authority to exercise superintendence in the operation of its railway. Upon the east bound car reaching the turnout at the end of the double track, and when it was ready to proceed to White's Corner, in accordance with the defendant's regulations, before it passed to the single track, the conductor called "the dispatcher," one McFee, by telephone. It was not in dispute that this person acted as a despatcher, with an office some seven and a half miles distant from the turnout, with

authority to direct from that end the running of cars on the single track.   While the versions of the conversation which followed as given by him and the conductor substantially differed, the jury were free to believe the statements of the conductor.   If they did, it would follow that after giving his name, and that of the motorman, as being at the turnout going east, the conductor received the order, "All right to White's Corner," and after repeating the order to the despatcher, who made no further reply, the conductor also repeated it to the motorman, and their car then started from the turnout on to the single track, and proceeded on its way, when after running a short distance the collision took place.   If the order was given in this form, there was evidence for the consideration of the jury of negligence in superintendence on the part of the despatcher when he directed the east bound car to proceed, for which the defendant would be liable, as he either knew that the west bound car had not passed, or in the exercise of reasonable care ought to have known by the entries on the train despatcher's sheet which he is shown to have kept.   *Feeney* v. *York Manuf. Co.* 189 Mass. 336.   See *Donovan* v. *Boston & Maine Railroad*, 158 Mass. 450; *Mahoney* v. *New York & New England Railroad*, 160 Mass. 573.

But in avoidance of this conclusion the defendant contended at the trial, and now urges, that the negligence of the conductor and motorman of this car was the proximate cause of the accident, and that the jury should have been so instructed.   Before telephoning, the conductor examined the register kept for this purpose at the booth, which showed that only two cars had gone west when three should have been recorded, as the conductor and motorman of each car stopped and registered as they passed. It was provided among other rules, that, under such conditions, the east bound car should not have left the double track without a "written order," meaning an order written out by the conductor who received it by telephone, until the third car going west at that time had passed.   But the evidence very clearly shows that when the order was given the despatcher knew that the third car had not passed, as the conductor had given only the names of the conductor and motorman on the second car which appeared as the last entry upon this register.   If the

collision which followed would not have been caused if the conductor and the motorman had observed these rules, yet that such a result was probable should have been anticipated from the knowledge and experience of the train despatcher under whose order the car proceeded.   He was called upon, before giving this order, to take every reasonable precaution to ascertain whether three cars had passed ; and if he failed to ascertain this important fact his negligence could have been found to have been the efficient cause of the disaster.   *Oulighan* v. *Butler*, 189 Mass. 287, 292.

The defendant concedes that the judge was not required to instruct in the language requested, but contends that the instructions given upon this question were wrong.   *Graham* v. *Middleby*, 185 Mass. 349, 354.   It often happens, that a portion of a charge when separated from the context, may be incorrect as to the law applicable to the case, but the instructions as a whole, and not a part only, are to be examined when it is contended that the jury must have been misled by erroneous statements of the presiding judge.   *Jackman* v. *Bowker*, 4 Met. 235. *Rock* v. *Indian Orchard Mills*, 142 Mass. 522, 529.   *Lambeth Rope Co.* v. *Brigham*, 170 Mass. 518.   *Sullivan* v. *Rowe*, 194 Mass. 500.   Upon such an examination, it is manifest that the jury were told, that if they believed the despatcher's statement of the conversation the plaintiff could not recover.   But, if they accepted the evidence of the conductor, it was for them to say whether under the circumstances the despatcher was negligent. They further were instructed that, if the negligence of the despatcher was established, even if the conductor and motorman failed to observe the general order, they were then to determine whether the despatcher by using reasonable care in the discharge of his duties of superintendence ought to have foreseen that relying upon his special order the conductor and motorman might proceed notwithstanding the rules.   It would follow as stated in various ways throughout this portion of the charge, that, if the neglect of the conductor and the motorman was a more immediate cause of the collision, yet, if this would not have occurred but for the defendant's negligence, while the defendant was responsible only for the wrongful conduct of the despatcher, his act, being in force, could be found to have been the efficient and con-

trolling cause of the decedent's injuries. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15, 27. *Oulighan* v. *Butler, ubi supra. Flynn* v. *Butler,* 189 Mass. 377, 388.

*Exceptions overruled.*