JENNIE BALDWIN, administratrix, *vs.* AMERICAN WRITING PAPER COMPANY.

Hampden.    September 24, 1907. — October 18, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability. *Statute,* Violation as evidence of negligence. *Practice, Civil,* Judge's charge, Exceptions.

In an action against the proprietor of a factory for causing the death of the plaintiff's intestate, while he was working as an apprentice in the defendant's employ, if there is evidence that the plaintiff's intestate had been hired by the defendant's superintendent to learn the business of a millwright, that the intestate and one of the defendant's assistant millwrights upon finishing the piece of work upon which they had been engaged both were ordered, or the assistant millwright was ordered, by the superintendent to start an engine which had remained unused for more than three days, that the assistant millwright attempted to start the engine, while the intestate was standing in the doorway of the engine room looking at him, and performed this duty in such a careless and incompetent manner that a pipe of the engine exploded and caused the injuries which resulted in the death of the intestate, it cannot be said as matter of law that the intestate was not present rightfully.

In an action against the proprietor of a factory for causing the death of the plaintiff's intestate while he was working as an apprentice in the defendant's employ "to learn the business of a millwright," it appeared that the plaintiff's intestate was standing in the doorway of the boiler room watching an assistant millwright of the defendant who had been ordered by the defendant's superintendent to start an engine which had remained unused for more than three days, and who performed this duty in such a careless and incompetent manner as to cause an

explosion which scalded the intestate fatally, and it also appeared that the intestate had no mechanical knowledge of the adjustment of this kind of engine or of the manner in which it was operated, and that, when the assistant millwright began to start the engine in an unskilful and dangerous way by opening a drip valve without shutting off the steam, a fireman in the employ of the defendant said "For God's sake Fred what are you doing?" that the assistant millwright said "I am drawing the water out of the pipe," that the fireman said "You are going to blow up the boiler room if you don't look out," and that the assistant millwright replied "I don't think so. It will be all right when I get the water out," whereupon the fireman said "I don't think so" and went out of the room, and immediately the explosion occurred. *Held*, that it could be found that the inexperience of the plaintiff's intestate was such that, although he heard the warning of the fireman, upon hearing the reply of the assistant millwright he failed to appreciate the peril of the situation, and that it could not be ruled as matter of law that knowing the danger he voluntarily exposed himself to the chance of mortal injury ; therefore that the question of his due care was for the jury.

An apprentice in a paper mill, who has been hired by the superintendent "to learn the business of a millwright," does not assume the risk of injury from an explosion caused by the carelessness of an incompetent fellow servant of whose incapacity he is entirely ignorant.

In an action against the proprietor of a factory for causing the death of the plaintiff's intestate while working there as an apprentice, if there is conflicting evidence on which it could be found that the defendant's superintendent knowingly ordered an incompetent servant to start an engine which had been unused for more than three days, the starting of which if done in the wrong way would be dangerous, and the servant, obeying this order, by reason of his incompetency caused an explosion which scalded the plaintiff mortally, the question of the negligence of the superintendent is for the jury.

*It seems,* that in an action at common law against the proprietor of a factory for causing the death of the plaintiff's intestate while employed by the defendant by the explosion of a pipe of an engine, if it appears that the engineer's license of the defendant's superintendent in charge of the engine, required by R. L. c. 102, § 78, had expired under the provisions of § 81 of the same chapter some months before the accident and that it had not been renewed, the defendant's retention of an unlicensed engineer in its service may be considered by the jury as evidence of the defendant's negligence.

Where an action of tort is submitted to the jury on four different counts, and certain instructions are given by the judge intended to apply only to one of the counts, if the defendant is apprehensive that the jury may be misled into applying these instructions inadvertently to another count on which the verdict finally is returned, he must ask the judge to give further instructions to make the matter clear, and, if he fails to do so, cannot complain afterwards because such further instructions were not given.

TORT by the administratrix of the estate of Charles R. Baldwin, to recover for his conscious suffering and death from being scalded by steam escaping from a broken steam pipe in the paper mill of the defendant where the intestate was employed. Writ dated June 1, 1905.

In the Superior Court the case was tried before *Crosby*, J. The evidence material to the only count on which the jury returned their verdict is described in the opinion.

The warning given by one Tuttle and the reply of one Lajoie are referred to in the opinion. Tuttle was a stationary fireman in the defendant's factory. He testified, among other things, as follows : " I was there at the time of the accident. I first heard what was called the water hammer in the steam pipe ; . . . when I first heard the hammer of course I didn't expect it was time to start the engine and I went to ascertain what was causing it, and I went over here (showing), round through into the engine room, round here (showing), down to the wheel, and I saw what was causing it ; I saw Mr. Lajoie standing here with his hand on his drip pipe valve ; when I first saw Mr. Baldwin he was right in the corner in the doorway, on the threshold of the door, with his right hand on the casing looking at Mr. Lajoie ; he was doing nothing only with his right hand on the casing of the doorway ; when I came round to the corner I heard the hammering going on and I says, ' For God's sake Fred what are you doing ? ' and he says ' I am drawing the water out of the pipe ' ; and I says, ' You are going to blow up the boiler room if you don't look out ' ; and he says, ' I don't think so. It will be all right when I get the water out.' And I says, ' I don't think so ' ; and I turned and went back out and had stepped just through the doorway here (showing), the door just swung behind me when I heard the explosion."

At the close of the evidence the defendant asked the judge to give the following instructions, besides others which have become immaterial :

" 1. Upon the entire evidence, pleadings and specifications the plaintiff is not entitled to recover."

" 7. There is no sufficient evidence that the cause of the accident was the negligent act of a superintendent whose sole or principal duty was that of superintendence while acting as such superintendent.

" 8. The plaintiff is not entitled to recover for any alleged negligence upon the part of one David Griswold while acting as alleged superintendent."

" 17. There is no sufficient evidence that the intestate's own

failure to exercise due care did not cause or contribute to his injury and plaintiff is therefore not entitled to recover.

"18. The cause of the intestate's injury and death was the negligence of a mere fellow servant, and the plaintiff is therefore not entitled to recover.

"19. The injury which the plaintiff's intestate received was the result of the operation of one of the risks which he assumed, and the plaintiff is therefore not entitled to recover."

The judge refused to give any of. these instructions, and left the case to the jury with other instructions, some of which are described in the opinion. The jury returned a verdict for the plaintiff in the sum of $5,000, of which they apportioned $400 for conscious suffering and $4,600 for the death. The defendant alleged exceptions.

*W. ·Hamilton*, for the defendant.

*M. M. Taylor*, for the plaintiff.

BRALEY, J.   While the declaration contained thirteen counts, the case was submitted to the jury on the second, sixth, twelfth. and thirteenth, but as the defendant concedes that the verdict for the plaintiff was returned upon the second count, only that count, declaring upon the alleged negligence of the acting superintendent under R. L. c. 106, § 71, cl. 2, with an assessment of damages under § 72, is material. The defendant's numerous requests for rulings were refused except as embodied in the instructions, but only the exceptions connected with the second count having been argued, the others must be treated as waived. The questions thus presented relate to the scope of the intestate's contract of service, his failure to exercise due care, and whether there was evidence that his injuries and death were caused by the negligence of one Griswold while acting as the defendant's superintendent. In such an inquiry the weight of evidence has no place, and we proceed to ascertain whether there was any testimony which warranted the submission of these questions to the jury. The defendant in the operation of its factory, among other means of supplying motive power, used a horizontal stationary steam engine the cylinder of which was put in communication with the boilers from a higher plane by an iron pipe with lateral elbows. This pipe contained three valves. The first, described as a gate valve near the boiler, admitted·

steam; the second, a throttle valve at the end near the cylinder, regulated the flow of steam to the engine; and the third, a drip valve set in the elbow nearest the engine, upon being opened drained the pipe of accumulated water. There was evidence that the engine not being in daily use, the throttle valve at that time was left closed, with the gate valve open, while the drip valve remained shut, thereby causing cold water to accumulate from the condensation of steam until the entire pipe might become filled. It was unquestioned that when this state of things existed, if the operator starting the engine opened the drip valve with the gate valve remaining open, steam from the boilers coming in contact simultaneously with the cold surface of the pipe and of the water, would condense rapidly in the upper part, creating a draft of great velocity by the resistance of the water at the point of condensation, and, there not being sufficient space for expansion, the pressure would become so great that the pipe would burst. If an explosion followed, employees who were in sufficient proximity were likely to be scalded by escaping steam. It seems to have been equally unquestioned, or there was plenary evidence from which it could have been found, that, because of certain conditions restricting the use of the water power with which the factory was equipped, it became necessary in the afternoon of the day of the accident that this auxiliary engine, after having been idle for more than three days with the throttle and drip valves closed but with the gate valve open, should be put in commission. The defendant's servant, one Lajoie, who performed this work, without closing the gate valve opened the drip valve, and the steam passing into the pipe caused an explosion which resulted in the scalding of the plaintiff's intestate, who subsequently died from the injury. It is contended by the defendant that because the decedent stood in the doorway of the engine room apparently observing the mode of operation and nothing more, he was not at the time engaged in the performance of any duty, or was a mere volunteer. But, while the evidence was conflicting, the jury were not obliged to accept the defendant's theory, that the intestate voluntarily left the work on which he had been employed, and accompanied Lajoie, who for some considerable time had been entrusted with this duty. From the testimony of the defendant's witness Griswold, the

jury could find that the intestate had been hired by him "to learn the business of a millwright," and they further could find upon all the evidence so far as material that Lajoie was recognized as one of the company's assistant millwrights, even if he had not served an apprenticeship, but had become qualified from his experience in the defendant's employment. Lajoie and the intestate, previously to their going to the engine room, had been engaged upon a particular piece of work to which they had been called, but upon its completion, while Griswold testified that he gave "them directions to return to their own work," there was evidence that instead he directed either Lajoie or both to start the engine. If both were sent, or Lajoie only, then from the nature of the intestate's service as an apprentice it cannot be said as matter of law that he was not present rightfully. *Ferren* v. *Old Colony Railroad*, 143 Mass. 197. *Patnode* v. *Warren Cotton Mills*, 157 Mass. 283. The argument as to his negligence or assumption of risk may be noticed briefly. It appears that the intestate, neither when he was employed nor at the time of the explosion, had any mechanical knowledge of the adjustment of an engine of this description or of the manner in which it was operated, and while it could be found that he heard the warning of Tuttle, whether upon hearing the reply of Lajoie his inexperience was such that he failed to realize the peril of. the situation, was properly left to the jury. *Keeley* v. *Boston Elevated Railway*, 192 Mass. 481. It certainly could not have been ruled as matter of law that the intestate knew and appreciated the danger that an explosion might happen, and with such knowledge voluntarily exposed himself to the chance of mortal injury. The seventh, eighth, seventeenth and nineteenth requests were refused rightly, and the instructions given were appropriate. *Maher* v. *Boston & Albany Railroad*, 158 Mass. 36. *Garant* v. *Cashman*, 183 Mass. 13. *Wagner* v. *Boston Elevated Railway*, 188 Mass. 437. *Urquhart* v. *Smith & Anthony Co.* 192 Mass. 257. *Cooney* v. *Commonwealth Avenue Street Railway*, *ante*, 11. Nor could the eighteenth request properly have been granted. If the explosion was caused by the incapacity of Lajoie, as the jury well might find upon evidence to which later we shall more fully recur, neither by his contract of employment nor by subsequent conduct can the intestate be said to have as-

sumed any risk of injury arising from the carelessness of an incompetent·fellow servant, but of whose incapacity he is shown to have been entirely ignorant. *Hatt* v. *Nay*, 144 Mass. 186. This distinction also was covered fully by the instructions.

But if the evidence justified the submission of the case to the ·jury on these issues the principal ground upon which the defendant endeavors to avoid liability is, that there was no evidence that the intestate was injured through any act of negligence on the part of the acting superintendent.

Of his representative position and competency as master millwright in charge of this portion of the motive power there seems finally to have been no dispute.   But, if controverted, it is sufficient to say, that the evidence was ample to warrant a finding that although there was a general superintendent employed by the defendant, Griswold hired the millwrights, and exercised supervision and control over them, and over this department. *Geloneck* v. *Dean Steam Pump Co.* 165 Mass. 202. *Reynolds* v. *Barnard*, 168 Mass. 226.   *Crowley* v. *Cutting*, 165 Mass. 436. *Mahoney* v. *Bay State Pink Granite Co.* 184 Mass. 287, 288, and cases cited.   *Murphy* v. *New York, New Haven, & Hartford Railroad*, 187 Mass. 18.   *Reardon* v. *Byrne*, 195 Mass. 146.   It is to be assumed from his evidence that he was familiar with the proper method of operating the engine after it had been at rest during the period and under the conditions previously stated, and upon all the evidence the jury further could have found that he knew, or in the exercise of reasonable care should have known, that to put it in use by opening 'the drip valve while the gate valve also remained open, was unskilful and dangerous.   While he testified that Lajoie during his employment had proved to be very intelligent, and for this purpose was a competent millwright, the declarations of Lajoie who died before the trial, were introduced in evidence under R. L. c. 175, § 66, and if believed, the jury could find that he followed exact instructions previously given by Griswold, which constituted the only method he had been taught, or of which he had knowledge.   They also would be warranted in finding not only that Lajoie was incompetent to perform this duty, but that Griswold ought to have known of his incompetency.   *Cooney* v. *Commonwealth Avenue Street Railway, ubi supra.*   But the plaintiff was required to go fur-

ther, as the defendant would not be responsible unless Lajoie was ordered by Griswold to start the engine, and in obedience to the command executed the order. Again this also was purely a question of fact. It was indeed denied by him that he gave the order, yet not only were his alleged admissions to the contrary introduced, but the evidence of Lajoie was unequivocal, that "Mr. Griswold sent me to start the engine." Upon conflicting testimony it was open to the jury therefore to reach the conclusion that the acting superintendent knowingly directed an incompetent servant, who obeyed the order, to perform this work, and by reason of his incompetency the decedent's injury and death were caused. Accordingly the defendant's seventh request, so far as applicable to this issue, and the eighth request were refused rightly, and those given correctly stated the law. *Solari* v. *Clark*, 187 Mass. 229. *McPhee* v. *New England Structural Co.* 188 Mass. 141.

Among other instructions, the jury were told that if they found that Griswold had been given supervision of the engine, then as the engineer's license issued to him under the provisions of R. L. c. 102, § 78, had expired at the time of the explosion, the defendant's continuance of an unlicensed engineer was some evidence for their consideration of its negligence. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580, 582, and cases cited. They further were instructed in substance that, if the elbow which burst was defectively constructed, Griswold's knowledge or means of knowledge of its condition also might be considered in connection with the same question. It is now contended by the defendant that these instructions were erroneous when applied to the second count, because the evidence failed to show that his license had expired, and as the plaintiff contended that he was negligent in permitting the defective elbow to remain, the verdict may have been returned upon either of these grounds which were unsupported by the evidence. The argument, however, cannot be sustained as there was uncontroverted testimony given by Griswold himself, that under the provisions of § 81 his license had expired at least some months before, and notwithstanding the evidence of the defendant's witnesses, if the plaintiff's experts were believed, the elbow had been weakened by the insertion of the drip valve. But the full answer is, that

a careful analysis of the entire charge makes it plain, that these instructions were intended to relate, and must have been understood by the jury to relate, only to the counts at common law to which they would be applicable. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580. *Doe* v. *Boston & Worcester Street Railway*, 195 Mass. 168. Besides the general instructions being correct, if the defendant was apprehensive that the jury inadvertently might be misled in applying them to the different counts, it should specifically have directed the attention of the presiding judge to the distinctions now made, and requested further instructions. *Cooney* v. *Commonwealth Avenue Street Railway*, ante, 11.

*Exceptions overruled.*