## WILLIAM HEFFERNAN *vs.* FALL RIVER IRON WORKS COMPANY.

Bristol.   October 29, 1907. — December 31, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Agency*, Double employment.   *Negligence*, Employer's liability.

At the trial of an action for personal injuries alleged to have been received by the plaintiff while in the employ of the defendant in his cotton mill, there was evidence tending to show that the plaintiff was injured while cleaning a carding machine, that the carding machine was being set up in the defendant's mill by one L. under an agreement whereby the defendant was required to furnish "usual laborer's assistance," that the plaintiff was set to work and kept at work on the machine by one acting as superintendent for the defendant and, by order of such superintendent, was instructed in his work by one who was in the employ of L., that the plaintiff did not know that he was working for any one other than the defendant and had never heard of L., and that he was paid by the defendant.   *Held*, that, in order to constitute the plaintiff the servant of L., there must have been such a change in his relations to the defendant that the defendant had ceased for the time being to have any direction over or control of him and that L. had become responsible for the discharge of those duties which a master owes to his servant in respect to matters affecting his safety ; and that the question whether, at the time of the accident, such a change had occurred was for the jury.

At the trial of an action by one employed in a cotton mill to recover for personal injuries alleged to have been received by the plaintiff by reason of a failure of the defendant to warn him of the dangerous character of a machine upon which he was working, there was evidence tending to show that the plaintiff had been set to work before the accident by a superintendent of the defendant at cleaning rapidly revolving cylinders of carding machines, no one of which had attached to it an appliance called a licker-in, that a licker-in was another smaller cylinder with teeth upon it, which revolved on a separate axis outside of and in the opposite direction from, but close to, the main cylinder which the plaintiff was cleaning; that just before the accident the plaintiff was set to work cleaning the cylinder of a machine which had a licker-in that was wrapped up so that he could see only the wrappings, that he never had seen a licker-in and did not know of its character; that the superintendent who set him to work upon the machine with the licker-in had not warned him of its character, but had delegated the duty of instructing him to one who was not in the employ of the defendant, and that such person had not warned him of the character of the licker-in ; that, while he was cleaning the main cylinder as he had been told to do, a stick that he was using slipped and his hand was drawn between the cylinders and was injured on the teeth of the licker-in.   *Held*, that the questions, whether the plaintiff was in the exercise of due care, whether there was an obvious risk of injury or one which he assumed, and whether the defendant was negligent as alleged, were for the jury.

TORT by one employed in a cotton mill for injuries received while cleaning a carding machine and alleged to be due to failure to instruct and warn him of the dangers of his occupation. Writ in the Superior Court for the county of Bristol dated March 12, 1906.

At the trial, which was before *Dana,* J., the plaintiff testified that at the time of his injury he was nineteen years of age and had been working for the defendant less than a month; that he never had worked as an operative in a mill nor had he ever operated any machinery; that, when he went to work for the defendant, he was hired by one Allen, who was his boss and told him what to do; that, about a week before the accident, Allen set him to work cleaning carding machines and had just started to show him how when a man named Schoules came along and Allen said "This gentleman will show you how to do it," and walked away. Schoules then showed him. After he had been at work as directed for a week, he was put to work at cleaning a carding machine which had a different appliance upon it, which, after the accident, he learned was a licker-in. This appliance is described in the opinion. He discovered that he could not work as he had been directed to with the other machines, and returned to bench work, when Allen came to him and told him to go back to work on the machine. Schoules, who was passing by, thereupon instructed him in a new way to work, adapted to the machine with the new appliance, but did not warn him in any way of the dangers attending cleaning the machine with the licker-in on it. The licker-in was wrapped in paper and the plaintiff could not see that it had teeth. He had seen no such appliances around the mill.

The plaintiff also testified that he did not know a man named Leigh, never had worked for him to his knowledge, never was told that he was going to work for him or that he was going to work for any one except the defendant, and that he had no knowledge of any kind that he was in any one else's employment. It was admitted that the defendant paid the plaintiff's wages. Allen, though present at the trial and sworn as a witness for the defendant, was not called to testify. The deposition of Schoules was read in which he stated that he had warned the plaintiff to keep his stick off the licker-in.

At the close of the evidence, the presiding judge directed a verdict for the defendant, and the plaintiff excepted.

Other facts are stated in the opinion.

*C. R. Cummings,* for the plaintiff.

*R. P. Borden,* for the defendant.

MORTON, J. At the close of the evidence a verdict was directed for the defendant on its motion, and the plaintiff excepted. The question is whether there was any evidence warranting a verdict for the plaintiff. We think that there was.

The plaintiff was hired to work as a laborer for the defendant by one Allen, whose sole or principal duty, it could have been found, was that of superintendence. Allen set the plaintiff to work at first at cleaning pieces of machinery, and about a week later set him to work at clearing the cylinders of cards which were being set up in the mill by one Leigh under a contract between him and the defendant. This contract bound the defendant to furnish " usual laborer's assistance " in fitting up the cards. But there was nothing to show that the plaintiff knew, or at least the evidence would have warranted a finding that he did not know, that he was working for any one except the defendant and had never consented or contracted to work for Leigh. It is possible, perhaps, that his consent could have been implied from the nature of the work which he was hired by the defendant to do. But the question whether he was at the time of the accident in the employment of the defendant or of Leigh was one of fact to be determined by the jury upon all of the evidence. In order to constitute the plaintiff the servant of Leigh, there must have been such a change in his relations to the defendant that the defendant had ceased for the time being to have any direction over or control of him, and Leigh had become responsible for the discharge of those duties which a master owes to his servant in respect to matters affecting his safety. *Driscoll* v. *Towle,* 181 Mass. 416. *Coughlan* v. *Cambridge,* 166 Mass. 268. There was nothing in the contract between the defendant and Leigh necessarily inconsistent with the plaintiff's continuing in the defendant's employment. The defendant was to furnish laborers to assist Leigh in setting up the cards, but there was nothing in that arrangement which necessarily operated to transfer the laborers so furnished from the employment of the defendant to that of

Leigh while they were so engaged.  As already observed, the question, in whose employment the plaintiff was at the time of the accident, was one of fact for the jury.

There was also evidence, we think, warranting a finding of due care on the part of the plaintiff and of negligence on the part of the defendant in failing to warn or instruct him of the danger when he was set to work on the card on which he was injured. That card differed from the cards on which he had been working in having the " licker-in," as it is termed, in position.  This was a small cylinder covered with teeth and revolving in an opposite direction from that in which the main cylinder revolved, and was from one to two inches from the main cylinder.  The cylinder had to be cleaned while in motion, and the method of cleaning it with the " licker-in " in position was different from that of cleaning it when the " licker-in " was not in position. The cylinder when in motion revolved towards the plaintiff.  The " licker-in " was covered with paper and the plaintiff testified that he did not know what it was.  In attempting to clean the cylinder as he had been instructed to do, the stick which the plaintiff was using slipped, and his hand went down between the " licker-in " and the cylinder, setting the " licker-in " in motion, causing the injuries complained of.

There was evidence tending to show that the plaintiff was cleaning the cylinder in the manner in which he had been told to clean it, so far as any instruction at all had been given to him, and we do not see, therefore, how it could be ruled as matter of law that he was not in the exercise of due care.  Nor do we see how it could be said as matter of law that he assumed the risk. According to his testimony he did not know or appreciate the danger, and, unless he did, he could not be said to have assumed it.  How much weight his testimony was entitled to was, of course, for the jury to say.  And it was also, we think, for the jury to say whether, taking all of the circumstances into account, the risk was an obvious one.  Whether the risk was an obvious one would depend largely, it seems to us, on the degree of credibility to which, in the opinion of a jury, the plaintiff's statements in regard to his knowledge or ignorance respecting the " licker-in " might be entitled.  If he knew what a " licker-in " was and how it operated, and that there was one in position on the card

on which he was working, then, we think, that the risk that, if the stick slipped, his hand might go down between the " licker-in " and the revolving cylinder was an obvious one.  But, if he did not know these things, then we do not see how it could be said that the risk was an obvious one.

The remaining question relates to the defendant's negligence. There was testimony tending to show that, when Allen set the plaintiff to work on the card on which he was injured, he gave him no warning or instructions as to the manner of doing the work or as to the danger.  The only instructions which were or had been given to the plaintiff as to the machine on which he was injured were given to him by one Schoules, who, the testimony tended to show, was in the employ of Leigh, but to whom, the testimony also tended to show, Allen had delegated the duty of instruction, and who thereby became, for that purpose, the servant of the defendant.  The questions whether any instructions were needed, and, if so, whether those which were or had been given were sufficient, were for the jury and should have been submitted to them.

*Exceptions sustained.*