HENRY J. BOWIE *vs.* COFFIN VALVE COMPANY.
SAME *vs.* FITCHBURG STEAM ENGINE COMPANY.

Suffolk. November 17, 1908. — January 7, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence*, Employer's liability. *Agency. Master and Servant. Evidence*, Opinion: experts.

If a man, who theretofore has been employed as a machinist's helper and never has worked in hoisting heavy castings into place in setting up a stationary steam engine, is sent to help in such work under the immediate supervision of a superintendent, and, with another man, is ordered to hoist a heavy casting by pulling the chain of a fall, he has a right to assume, while obeying this order, that sufficient precaution has been taken to prevent the casting as it rises from the ground from swinging in too quickly before being lowered to its final position, and he is not negligent as matter of law in failing to appreciate fully the danger that a fellow servant in charge of a guy rope attached to the casting may be unable to prevent the rope from slipping and the casting from swinging forward so rapidly as to strike him before he can get out of the way; nor does he assume the risk of such an accident.

In an action by a workman against a corporation manufacturing and undertaking to set up stationary steam engines, by which he was employed, without previous experience, to help in setting up such an engine under the personal supervision of a superintendent, for personal injuries from a heavy casting swinging upon him when in obedience to the order of the superintendent he with another workman had begun to hoist it by pulling on the chain of a fall for the purpose of setting it in place, where it appears that the selection and use of the appliances, their proper adjustment, the method of operation and the number of men who should be at the fall and of those managing the guy rope attached to the casting were all within the supervision and control of the superintendent who gave the order, if there is evidence that the accident was caused by the fact that only one man was at the guy rope and was unable to prevent it from slipping so that the casting swung forward rapidly and struck the plaintiff before he could get out of the way, it is a question for the jury whether the superintendent was negligent in failing to provide a sufficient number of men to steady the load or in failing to adopt a different method of hoisting.

If an engine company makes a contract to deliver a stationary steam engine to a valve company and to supply a man to superintend the erection of the engine ready for steam connections, turning it over in running order, the valve company agreeing to pay the expenses of the man thus sent and to furnish "laboring help as needed," and if in pursuance of this contract the engine company sends a man who acts as its representative in superintending the setting up of the engine, a workman of the valve company, who is told by the general manager of the valve company to help the superintendent sent by the engine company and to obey his orders in whatever he wants done and thereupon proceeds with other men to work under the orders of such superintendent in setting up the engine, becomes while doing so the servant of the engine company, and that

company owes him the duty of competent superintendence and is liable to him for injuries caused by its superintendent's negligence.

In an action by a workman against an engine company, by which he was employed to help in setting up a stationary steam engine, for personal injuries from a heavy casting swinging upon him, when in obedience to the order of the superintendent in charge he with another workman had begun to hoist the casting by pulling on the chain of a fall for the purpose of setting it in place, upon the question of fact whether one man at the guy rope attached to the casting would be sufficient to prevent the casting as it was being raised into position from swinging in too rapidly toward the base where it was to rest, it is within the discretion of the presiding judge whether to admit the opinion of an expert as an aid to the jury or whether to exclude the expert testimony and to leave the question, in regard to such a simple mechanical operation not requiring technical skill, to be passed upon by the jury in the light of their common knowledge.

Two ACTIONS OF TORT by the same plaintiff, the first against the Coffin Valve Company and the second against the Fitchburg Steam Engine Company, each of the defendants being a corporation, for personal injuries received by the plaintiff on April 21, 1904. Writs dated October 3, 1904.

In the Superior Court the cases were tried together before *Richardson, J.* From the evidence it appeared that the plaintiff entered the employ of the Coffin Valve Company on or about April 10, 1904. The plaintiff testified as follows: "That he was a steamfitter's helper and that on or about April 21, 1904, he was working for the Coffin Valve Company as a machinist's helper, or a general man helping the worker, and that his foreman was one Masters, who was also employed by the Coffin Valve Company, and that he took his orders from Masters; that on the morning of the accident one Chadbourne, the general manager of the Coffin Valve Company, took the plaintiff from Masters and gave him to a man called Daniels, and Chadbourne told the plaintiff to help this man, whatever he wanted the plaintiff to do under his charge; that the plaintiff went with Daniels to the engine room of the Coffin Valve Company and that an engine was sitting there on the base and a few fixings which the plaintiff did not know much about; that they put skids under the engine and levelled it up; that the plaintiff took his orders from Daniels; that Daniels gave all the orders to the rest of the men there; that Daniels ordered the plaintiff and other men to go after a set of chain falls and that afterwards the plaintiff helped in rigging them up, as much as he knew, and that Daniels was in charge of all the men in the

gang and that so far as plaintiff knew no one else gave instructions as to the way and manner the engine was to be set up except Daniels; that the plaintiff was put to work by Daniels to help a man on the falls, the falls being hitched to the casting or half of the fly wheel, that was to go in the pit; that the falls were used to raise the casting on its bearing by pulling on the pulley and that would lift this casting up; that the casting consisted of half the fly wheel, and that it was to be put over and turned the other side from which it was sitting and it was to run in the pit; that the casting was seven feet in diameter and the weight was from two thousand to twenty-three hundred pounds." The plaintiff further testified " that the falls were set so as to swing the casting nearly over to the place where it was to be set up; that then it would be lowered down and the falls would be taken off it before we would take hold of it by our hands, as I understood it, but that the plaintiff did not know much about it at that time; that when the casting was lifted it was not evident to his mind that it was going to swing, he having worked at that kind of business only three days; that Daniels directed one McAvinnay and the plaintiff to lift this piece of casting; that Daniels fastened a rope to the fly wheel or casting and put it out through a window and sent one Wilburt to hold the rope against the corner of the window to prevent the fly wheel from coming forward too quickly when it was raised off the skids; that the plaintiff and McAvinnay were pulling on the falls, by the direction of Daniels, about ten feet from the casting and facing it, and when we were directed to pull, as it raised off, I understood Daniels to say to Wilburt outside, to slacken away on the rope through the window, and, as he slackened away, the casting came so swiftly that it caught my leg; that it swung so swiftly that it was impossible for me to clear the casting coming; that I tried to get out of the way but could not; that it caught my ankle causing the injuries complained off and that this was the first half of the fly wheel that they were putting in position." There was other testimony regarding the accident given by the plaintiff and by other witnesses.

The plaintiff offered as an expert one Masters who testified that he had been employed as foreman by the Coffin Valve Company for twenty-five years, and that as such he had superin-

tended the lifting of similar weights almost daily in his place of business and had rigged pulleys for the purpose of lifting them and had attached ropes to the weights to hold them from moving while suspended in air, in a way similar to that in which the work was being done at the time the plaintiff was injured.

The counsel for the plaintiff then asked the following question: "Assuming that you have got a load here which is a half of a fly wheel, which weighs between two thousand and twenty-three hundred pounds, assuming that this is within eight or ten feet from a perpendicular line drawn to a point overhead some ten feet, and that there is a chain that is attached to the centre of that portion of the fly wheel — or, if there is any question of where it was attached, we will say it was attached to that portion of the fly wheel, and that the line was drawn directly up overhead of where the plumb line would be on the ground, and that there was attached to that casting here a rope which went out some twenty feet to a window and the distance is about twenty feet to where the window was and that the man was standing there, with a rope attached to the casting, getting out of the window some five feet outside, and has no other way of holding that casting when it leaves the ground except by his hand, hanging on to the rope against the jamb of the window and after the casting leaves the ground, two or three inches above the skids, would the man, using no other method, be able to hold that weight from going towards the centre?" This question was objected to, and the judge said, "If you can estimate the strength required in horse power, you may do it." To this ruling the plaintiff excepted.

When the plaintiff rested his case the defendant Coffin Valve Company also rested on the evidence offered by the plaintiff.

The defendant Fitchburg Steam Engine Company introduced in evidence a contract in writing between the Fitchburg Steam Engine Company and the Coffin Valve Company, of which the following abstract was printed in the bill of exceptions as the only part of the contract material to the issue in the case:

"We [the Fitchburg Steam Engine Company] will furnish foundation plan and deliver the engine on cars here supplying man's time for three days, or less, to superintend the erection of engine ready for steam connections and, if connections are made

without delay, to start engine under steam, turning it over to you in running order you paying his expenses and furnishing laboring help as needed, all for the sum of thirteen hundred fifty and no one hundredths ($1350) dollars and will allow you for your 9 × 18 engine f. o. b. here $360.00 in as good condition as now, fair, wear and tear considered. Ninety ($90.00) dollars when engine is shipped and notes at sixty (60), ninety (90), one hundred twenty (120) and one hundred fifty (150) days for two hundred twenty-five dollars (225.00) each from date of shipment each having interest added after thirty (30) days from its date, thus giving five months time from shipment, for payment."

The defendant Fitchburg Steam Engine Company called as its only witness Chadbourne, the superintendent of the Coffin Valve Company mentioned above as the general manager of that company, who testified that Daniels was sent by the Fitchburg Steam Engine Company, and was received by the Coffin Valve Company under the terms of this contract; that the engine had been shipped from Fitchburg and the witness did not know whether or not the contract price of the engine had been paid; that the engine had been unloaded from the cars in Neponset at the factory of the Coffin Valve Company by the workmen of the Coffin Valve Company, and that the various parts had been placed in the engine room; that Wilburt, McAvinnay and the plaintiff all received their pay from the Coffin Valve Company in the regular course of its business; that the Coffin Valve Company built the bed on which the engine was to rest; and that one Perry, a foreman of the Coffin Valve Company, gave Daniels directions where to set up the engine but did not give him any directions as to the details of setting it up; that Daniels superintended the erection of the engine; that Perry came there occasionally and looked at the engine; that he did not talk with the workmen at all but that he spoke once or twice with Daniels; and that Daniels stayed there until the engine was completely set up.

The evidence also tended to show that no part of the apparatus used in lifting the fly wheel broke or gave way during the operation.

At the close of all the evidence the judge ordered a verdict

for the defendant in each case; and the plaintiff alleged exceptions, which by agreement were allowed in one bill of exceptions applying to both cases.

*S. A. Fuller,* (*C. Toye* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell,* for the Coffin Valve Company.

*F. W. Fosdick,* for the Fitchburg Steam Engine Company.

BRALEY, J.    These actions of tort were tried together, and a verdict having been ordered in favor of both defendants the cases are before us on a single bill of exceptions.    The pleadings contain two counts at common law and two under the statute, but, as the plaintiff relied only upon the third count charging negligence of some person intrusted by the defendants with superintendence, the other counts are immaterial.    The question for decision is whether there was any evidence which would warrant a verdict for the plaintiff against either or both defendants.

Independently of the inquiry as to which one of the two was his master at the time of the accident, each defendant contends that the plaintiff was not in the exercise of due care, and that he assumed the risk.    But his general employment had been that of a machinist's helper, and he never had worked in the manner described in hoisting into place heavy castings while setting up a stationary steam engine.    If, in connection with his inexperience in this particular line of service, there is taken into consideration the additional facts, that the work was done under the immediate supervision of a person who could have been found to have been acting as superintendent, and that when directed to pull upon the chain falls he had the right to rely upon the presumption that sufficient precaution had been taken to prevent the casting, or section of the fly wheel, as it rose from the ground from swinging in too quickly as it was lowered into final position, the jury could find, that, being at work in his appointed place under the eye of his master's representative, he was not guilty of contributory negligence, if he failed to appreciate fully the danger that his fellow servant in charge of the guy rope might be unable to prevent the rope from slipping and the load from swinging so rapidly forward as to strike him.    *Feeney* v. *York Manuf. Co.* 189 Mass. 336.    *Meagher* v. *Crawford Laundry Machinery Co.* 187 Mass. 586, 589, and cases cited.    *Connolly* v. *Booth,* 198 Mass. 577.    *Robertson* v. *Hersey,* 198 Mass. 528.

If there was evidence for the jury on this issue, the defendants urgently insist that they severally are without fault.   But the jury would be warranted in finding that one Daniels, to whom was delegated the sole charge of erecting the engine, and whose orders the plaintiff was directed to obey, was acting as superintendent within the meaning of the statute.   *Jordan* v. *New England Structural Co.* 197 Mass. 43.   *Murphy* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 18.   *Baldwin* v. *American Writing Paper Co.* 196 Mass. 402.   The selection and use of the appliances, their proper adjustment, the method of operation and the number of men who should be at the falls, or managing the guy rope were all within his supervision and control.   He was there because of his knowledge and skill to " superintend the erection of the engine, ready for steam connections."   It was a matter peculiarly within his judgment to determine how many men were necessary safely to manage the rope attached to the casting, and the evidence plainly showed, or it could have been found, that either more men ought to have been directed to steady the load or a different method should have been adopted.

But, if this was sufficient to require the submission of this issue to the jury under the decisions in *Reardon* v. *Byrne,* 195 Mass. 146, and *Connolly* v. *Booth,* 198 Mass. 577, and the cases there cited, and *Di Bari* v. *J. W. Bishop Co.* 199 Mass. 254, and *Hines* v. *Stanley G. I. Electric Manuf. Co.* 199 Mass. 522, we are brought to the further question, in whose service was the plaintiff employed when injured.   It was part of its contract, that the Fitchburg Steam Engine Company should set up, connect and " turn over " the engine in running order.   In performance of this part of the contract, it sent Daniels.   Upon the uncontradicted evidence he was there and was acting not as the representative of the vendee but of the vendor.   In the prosecution of the work, he alone gave the necessary orders, which were obeyed by the men, including the plaintiff, all of whom had been furnished by the vendee.   He was vested with the power of control, and the scope of his authority included everything which properly might be required for the installation of the engine, even if his expenses were to be borne by the Coffin Valve Company, which also was to furnish at its own expense such " laboring help as

needed." If while performing this particular service the plaintiff voluntarily subjected himself to the commands of Daniels and became the servant of the Fitchburg Steam Engine Company, then under the statute it would owe to him the duty of competent superintendence. *Delory* v. *Blodgett*, 185 Mass. 126. *Oulighan* v. *Butler*, 189 Mass. 287, 290, 291. *Haskell* v. *Boston District Messenger Co.* 190 Mass. 189, 193. Before the contract had been introduced, there was no evidence that Daniels was present as its representative, but, after the contract had been put in, it was a question of fact whether the plaintiff knew he was working for an independent contractor and consented to the transference. Unless this was found, the relation had not been established, for he could not be transferred from one master to another without his consent either expressly given or implied from the nature and character of the work when compared with his ordinary employment. *Driscoll* v. *Towle*, 181 Mass. 416, 418. *Heffernan* v. *Fall River Iron Works Co.* 197 Mass. 28.

But, if the case against this company should have been submitted to the jury, it does not follow that a verdict in favor of the Coffin Valve Company was ordered rightly. This defendant rested on the testimony offered by the plaintiff. The contract had not been put in evidence, and no discussion is called for to make plain what is evident upon the record, that, as the case then stood, the jury could have found that Daniels was in its service, and had been intrusted with superintendence. *Feeney* v. *York Manuf. Co.* 189 Mass. 336. *Murphy* v. *New York, New Haven, & Hartford Railroad*, 187 Mass. 18, 21. *Baldwin* v. *American Writing Paper Co.* 196 Mass. 402, 408. The verdict, therefore, as to this defendant also must be set aside, and, as there must be a new trial, the exceptions to the exclusion of the question asked of the plaintiff's expert should be considered. The inquiry of fact was whether one man at the rope would be sufficient to prevent the casting, as it was being raised into position, from too rapidly swinging in toward the base where it was to rest. While it might have been admitted in the discretion of the presiding judge, if he thought the jury would be aided by the expert's opinion, yet, from their common knowledge of what at most was a simple mechanical operation not involving technical skill, they were fully competent to decide this for themselves.

*Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131.
*Meehan* v. *Holyoke Street Railway Co.* 186 Mass. 511, 514.
*Erickson* v. *American Steel & Wire Co.* 193 Mass. 119, 126.
*Whalen* v. *Rosnosky,* 195 Mass. 545, 547.

*Exceptions sustained.*