FRED W. ASCH, Respondent, v. THE WASHBURN LIGNITE COAL COMPANY, a corporation, and WALKER D. HINES, Director General of Railroads, and as such Director of Minneapolis, St. Paul and Sault Ste. Marie Railway Company, a corporation, Appellants.

(186 N. W. 757.)

**Master and servant — relation created by transfer of service to third person.**

1. One in the general service of another may be transferred to the service of a third person so as to become the latter's servant with all the legal consequences of the new relation; but the relation is not changed, as a matter of law, merely because the servant is sent to do certain work for such third party who has made a bargain with the master for the performance of such service, even though the third party, under his arrangement with the master, pays wages directly to the servant for his services. In order to establish the relation of master and servant between the servant and such third person it must appear that the servant has expressly or by implication consented to the transfer of his services to the new master and to accept him as his master during the time of such service.

**Master and servant — railroad employer and coal mine owner held joint wrongdoers.**

2. A fireman on a locomotive who is injured by a collision between the locomotive and some cars placed on the track by a coal company may maintain a joint action against the railway company and the coal company if the collision was produced by the negligence of the railway company in operating the locomotive at an excessive rate of speed, concurring with the negligent act of the coal company in placing the cars on the track.

**Appeal and error — evidence — master and servant — amending complaint by adding name of Director General, and further specification as to injuries, not prejudicial error; in a fireman's personal injury action engineer's statement just before collision held admissible as part of res gestae; erroneous admission or exclusion of evidence held cured by other evidence; calling witness for cross-examination held not prejudicial error; evidence admissible on question of relation; testimony founded on hearsay, inadmissible.**

3. Certain rulings relating to amendment of the complaint, the examination of witnesses, and the admission and rejection of evidence considered, and, for reasons stated in the opinion, *held* proper or non-prejudicial.

**Evidence — permitting physician to explain X-ray plates in personal injury action held not error.**

4. Where X-ray plates had been proved by a physician, it was competent for him to explain them to the jury in particulars that are not understood by laymen.

**Evidence — testimony of medical experts as to nature and extent of injury held proper.**

5. It is proper to receive the opinions of medical experts as to the nature and extent of a personal injury.

**Evidence — injured servant is competent to testify to his feelings, pains and symptoms.**

6. The injured person is a competent witness to testify to his feelings, pains and symptoms, as well as to all the characteristics of the injury, so far as the same are perceptible to the senses, and do not require the exercise of scientific skill and knowledge.

**Trial — jury should not be instructed as to the effect of special verdict on parties' ultimate rights or liabilities.**

7. Where a case is submitted for a special verdict the jury should not be informed by instructions as to the effect of answers to questions in such special verdict on the ultimate right or liability of either party. It is proper, however, to give to the jury instructions embodying general rules of law appropriate to the particular questions of the special verdict in connection with which such rules are given.

**Trial — objectionable statement of counsel held cured by instructions to disregard.**

> 8. Error assigned upon alleged prejudicial remarks of counsel in the argument to the jury considered, and *held* not well taken.

**Master and servant — joint liability not relieved by fellow-servant doctrine.**

> 9. For reasons stated in the opinion it is *held* that the defendant, The Washburn Lignite Coal Company, is not relieved from liability by virtue of the fellow servant doctrine.

**Damages — verdict for $8,000 for probably permanent injuries held not excessive.**

> 10. A verdict for $8000.00 is *held* not excessive.

Opinion filed Jan. 20, 1922.

Appeal from the district court of Morton county, *Berry* J. Both defendants appeal from a judgment and from an order denying their motions for judgment notwithstanding the verdict or for a new trial.

Affirmed.

*Lee Combs, G. F. Dullam, John E. Palmer,* for appellants.

"Officers who have no personal knowledge of the transaction, having been appointed long after the transaction in issue, cannot be examined." Blasius v. Ins. Co. 175 N. Y. Supp. 709.

"A mere soliciting agent or salesman is not managing agent or officer under the terms of the statute." Blasius v. Ins. Co. Supra; 10 Cyc. 1342, first col. note; Hancock v. Ins. Co. 107 Mass. 113; Gunn v. N. Y. & N. H. Co. 50 N. E. 1031; McComb v. Chicago, St. Louis & New Orleans R. R. Co. et al, 7 Fed. Rep. 426.

The officer examined must have been an agent or officer of the corporation at the time of the occurance of the facts which are the subject of the examination or he cannot be lawfully examined under such statute. Johnson v. St. Paul & W. Coal Co. (Wis.) 105 N. W. 1048; Hughes v. Chicago, St. Paul & Omaha Ry. Co. (Wis.) 99 N. W. 897.

"An engineer is not the agent of the company to discourse on its account as to what may or may not happen or what is best for another employee to do in case of peril in the employment." Ohio & R. Co. v. Stein, 133 Ind. 243, 31 N. E. 180; Jones on Evidence, Vol. 2 p. 806, § 358 and cases cited; Reynolds v. Continental Ins. Co. 36 Mich. 131;

Gardner v. Detroit St. Ry. Co. (Mich.) 58 N. W. 49; Taylor v. N. Y. Central & Hudson Ry. 63 App. Div. 586, 71 N. Y. S. 884; Louisville & N. R. Co. v. Stewart, 56 Fed. 808.

"If the amendment objected to would not be a bar to a recovery under the original complaint, it ought not be allowed. It is only where the same evidence would settle both claims that the amendment is permissible." J. I. Case Threshing Machine Co. v. Eichinger, 15 S D. 530, 91 N. W. 82; Mares v. Worington, 8 N. D. 329, 79 N. W. 441.

"The very fullest freedom of speech within the duty of his profession should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing and appealing to prejudice irrelevant to the case and outside of the proof." Thompson on Trials, § 963 and cases cited; Lindsey v. Pettigrew (S. D.) 52 N. W. 873; Bendetson v. Moody (Mich.) 59 N. W. 252.

"A person who is in the general employment of one person may be temporarily in the service of another with respect to a particular transaction or piece of work, so that the relation of master and servant arises between them, even though the general employer may have an interest in the special work.

In such case the duty of using care to see that a safe place to work is furnished, or proper warning given, devolved upon the special employer." Westeover v. Hoover, 129 N. W. 285; Coughlan v. City of Cambridge, 44 N. E. 218; Miller v. Minnesota & N. W. Ry. Co. et al. 29 N. W. 188; Hitte, Adm'r. v. Republican Val. R. Co. (Neb.) 28 N. W. 284.

"He is the master, who has the choice, control and direction of the servants. The master remains liable for the negligence of his servants, unless he abandons their control to the hirer." Pioneer Fireproof Cons. Co. v. Hansen, 176 Ill. 108, 52 N. E. 19; Coughlan v. City of Cambridge, 166 Mass. 268, 44 N. E. 218; Consolidated Fireworks Co. v. Kochl (Ill.) 60 N. E. 87; McInerny v. Delaware & Hudson Canal Co., 82 Hun. 615, 151 N. Y. 412; See 26 Cyc. 1522.

The giving of general instructions as to the law of the case where a special verdict is to be returned, is improper. Boyce v. Schroeder, (Ind.) 51 N. E. 376; Stayner v. Joyce, 120 Ind. 99, 22 N. E. 89; Mauch v. Hartford, 112 Wis. 40, 87 N. W. 816.

"In returning a general verdict, the jury apply the law to the facts, and pronounce generally upon all of the issues. In a special verdict

they 'find the facts only,' and the trial judge determines their legal effect." Morrison v. Lee, 13 N. D. 591; Ward v. Chicago, M. & St Paul Ry. Co. (Wis.) 78 N. W. 443.

"It is reversible error for the court to give general instructions on any subject involved in a special verdict, well calculated to inform the jury how to answer in order to enable one of the parties to recover." Eyington v. City of Merrill, (Wis.) 88 N. W. 26.

*Sullivan, Hanley & Sullivan,* for respondents.

"A master is liable for damages caused by the negligence of his servant within the scope and in the course of his employment, although he neither directs nor is aware of it." Standard Oil Company v. Barkinson, 152 Fed. 681—82 C. C. A. 29; See cases cited 2nd Dec. Master and Servant vol. 15, 25 Key Number 304-34 Cent. Digest Master and Servant 1226-1229.

"The concurrent negligence of a third person is not a defense. 26 Cyc. 1531 Andrews v. Boedecker 126 Ill. 605, 18 N. E. 651, 9 Am St. Rep. 649, (affirming 27 Ill. App. 30); Lane v. Atlantic Works 107 Mass. 104.

"Where the negligence of a servant is an effective cause of injury, the intervention, between the negligence of the servant and the injury, of the negligence of another person which immediately causes the injury does not relieve the master from his liability for the negligence of his servant." Engelhart v. Tarrant, (1897) I. O. B. 240-66 L. J. O. B. 122-75 L. T. Rep. N. S. 617-45 Weekly Rep. 197.

"16 Concurrent negligence of two responsible persons. The general doctrine is that it is no defense, in actions for injuries resulting from negligence, that the negligence of third persons, or an inevitable accident, or an inanimate thing, contributed to cause the injury to the plaintiff, if the negligence of the defendant was an efficient cause, without which the injury would not have occurred. In other words, where a defendant is guilty of negligence, which causes an injury, and the plaintiff is free from negligence contributing thereto, the fact that the negligence of a third person also contributed does not relieve the defendant from liability for his negligence." 22 R. C. L. pp. 128-129; See also Concurrent Causes—Negligence Dec. Digest ¶ 61.

"It is no defense to an action for a negligent injury that the negligence of a third person, or an inevitable accident, or an inanimate thing,

contributed to the injury, if the prior negligence of the defendant was the efficient cause of the injury." The Joseph B. Thomas (D. C.) 8 Fed. 578; See Chairman v. Lake Erie & W. R. Co 105 Fed. 449; See Concurrent Causes Negligence—Cent. Digest ¶ 74.

It must be shown that the servant assented expressly or impliedly to such transfer. Delaware Etc. R. Co. v. Hardy N. J. L. 35, 34, 34 Atl. 986; 37 L. R. A. p. 47 in notes; Morgan v. Smith (1893) 156 Mass. 570; Missouri K. & T. R. Co. v. Ferch (Tex.) 36 S. W. 487.

The employees cannot contract away the rights of the plaintiff. That contract may be good as between themselves but not as against plaintiff. Sager v. Northern Pac. Ry. Co. 166 Fed. 527.

Railway Company had the right to hire and discharge. 37 L. R. A. Note 40.

Railway Company owned engine. 37 L. R. A. Note pp. 44-45.

Railway Company had power of control and did control him. 37 L. R. A. 38 and 39.

"Various tests have been proposed for determining the relation of master and servant so as to render the master liable to indemnify the servant for personal injuries, but it is impossible to lay down any definite and satisfactory rule to all cases, and the question must be determined as it arises upon the facts and circumstances of the case. It is a question for the jury under proper instructions of the court." 26 Cyc. 1083-1084 and note.

"It is not necessary that there should be a breach of a joint duty in any concerted action on the part of the defendants, but it is sufficient if their several acts of negligence concur and unite in producing the injury complained of." 33 Cyc. 726; Chicago etc. Railway Company v. Marshall, 38 Ind. App. 217, 75 N. E. 973; Mathews v. Delaware etc. Railway Company, 56 N. J. L. 34, 27 Atl. 919, 22 L. R. A. 261.

"The general rule is that where the negligence of two or more persons concurs in producing a single, indivisible injury, such persons are jointly and severally liable, and this though there was no common design or concert of action."

And there is this joint liability although one of defendants owed to the plaintiff a higher degree of care than the other. Edwards v. Great Northern Railway Compnay 171 N. W. 873, 42 N. D. 154; 33 Cyc. 726; Chicago etc. Railway Company v. Durant, 65 Kan. 380, 69

Pac. 356; 26 Cyc. 1094; 34 Cent. Digest "Master and Servant," ¶ 165: 33 Cyc. 726-727; 29 Cyc. 487-488; 105 Fed. 449.

CHRISTIANSON, J. This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff through the negligence of the two defendants. The case was submitted to the jury for a special verdict. The jury found, in effect, that plaintiff's injuries were occasioned by the negligence of the defendants, and that, by reason of said injuries, the plaintiff had been damaged in the sum of $8,000. Judgment was entered in favor of the plaintiff and against both of the defendants pursuant to the verdict. The defendants moved in the alternative for judgment notwithstanding the verdict or for a new trial. The motion was denied, and the defendants have appealed from the judgment and from the order denying such motion.

The facts as shown by the evidence, and as found by the jury in the special verdict, are substantially as follows: On October 19, 1918, the plaintiff, being then about 28 years old, entered into the employment of the Director General as a wiper in the Minneapolis, St. Paul & Sault Ste. Marie Railway Company's roundhouse at Bismarck, N. D. About a week later he was made a fireman, and continued to work in that capacity up to and including December 25, 1918, when he received the injuries for which recovery is sought in this action. He made several trips as fireman on one of the locomotives on the Missouri River division of the Minneapolis, St. Paul & Sault Ste. Marie Railway Company's railroad from Bismarck to Wishek, Kulm, and other points, and continued as such fireman on one of the locomotives of that railway company until the date of the accident. About December 18, 1918, the plaintiff was ordered to go to Wilton, N. D., and he was there directed to work as fireman on engine No. 35 of said railway company, which engine was leased or assigned to work for the defendant coal company in connection with the operation of its coal mines. He continued to fire that engine from the 18th of December, 1918, until the morning of the 25th of December, 1918, when he sustained the injuries which form the basis of this action.

The Minneapolis, St. Paul & Sault Ste. Marie Railway Company owns a line of railroad running from Bismarck north through the village of Wilton. At the time of the accident that line of railroad was under the control of, and was being operated by, the Director General. The

defendant coal company owns and is operating a lignite mine situated about three miles east of Wilton. That mine is served by a spur track extending easterly from the main line of said railway company's railroad at Wilton. Such spur track has a wye connection with the main line. The greater portion of the spur track is owned by the railway company, but a portion thereof running from and adjacent to the mine is owned by the coal company. The coal was hauled from the mine, and the workmen were taken to and from the mine, by locomotives and cars furnished by the defendant Director General; such locomotives and cars were operated by crews furnished by the defendant Director General to the coal company under a written agreement which will hereafter be more fully considered. Such spur track has a main track, and there are numerous sidings, especially at the end near the mine.

Early in the morning of December 25, 1918, the plaintiff fired up the engine, and it, being attached to the tender and passenger coach, was pulled out on the main spur track from Wilton to the coal mine. One Johnson was the engineer, and the plaintiff was fireman, and the train was being taken down to the coal mine for the purpose of taking the night crew away from the mine. The train started between 5 and 6 o'clock that morning. There was a fog which rendered it somewhat difficult to see. The rails were frosty, and it was necessary to use the headlight. When the train had run about one and a half miles from the point from where it started there suddenly appeared out of the fog, within a distance of about 300 feet certain box cars which had come over the switch from the tipple. When the box cars were observed the train was going down an incline, and was traveling at a rate of speed of about 20 miles an hour or over. When the engineer noticed the cars, he called to the plaintiff, saying, in substance: There are some box cars on the track ahead, "let's get out of here!" The plaintiff, too, saw the cars about the same time that the engineer saw them. The plaintiff testified that the gangway on his side of the cab was obstructed by a heavy canvas, supported by a rod firmly fastened and frozen to the floor; that he could not get out on his side of the cab, and for that reason jumped out of the window. The engineer, however, stepped out through the gangway on his side of the cab. The evidence shows that the engine crashed into the loaded cars about 80 feet from the point where Asch jumped out.

The plaintiff became unconscious, and was picked up and taken to

a doctor's office at Wilton, where he received first aid, and later was taken to a hospital in Bismarck, where he was confined for a period of some four weeks. Later he was under observation and treatment for a considerable period of time. While the plaintiff was in the hospital an X-ray photograph was taken, which showed a subluxation of a lumbar vertebra. And, according to the testimony of a medical expert, who testified upon the trial, the plaintiff's efficiency has been greatly reduced by reason of such subluxation. According to the evidence, the plaintiff prior to the accident was in excellent health, but since the accident he has continually suffered severe pain in the back, and has been unable to perform any hard work without discomfort. He is compelled to wear a belt to support his spine, and has been troubled with a backache. His left leg is still stiff, and his back bothers him continually. For some six months after the injury he was unable to work at all, and, owing to his physical condition since, has not been, and it is not likely that he will ever be, able to return to his former occupation.

The plaintiff claims that he is entitled to a verdict against the defendant coal company and the Director General jointly for the damages which he has sustained. The defendants both deny liability. Each defendant, however, claims further that, in the event there is any liability, the other defendant alone is liable. In other words, the defendant Director General claims that the engine on which the plaintiff was working was at the time of the collision leased to the coal company; that the plaintiff at the time of the accident was an employee of the coal company, and not an employee of the Director General. The coal company, on the other hand, claims that at the time of the injury the plaintiff was an employee of the Director General; that the coal company had a perfect right to place the box cars where they were placed; that it was not negligent in doing so; and that it is in no manner liable to the plaintiff.

The evidence shows that on November 1, 1918, a written contract was entered into between the coal company on the one part and the Director General and railway company on the other part. The first paragraph of the contract sets forth the inducement:

"Whereas the coal company owns and is operating a lignite mine known as mine 'No. 2,' served by a spur track extending easterly from the main track of the railroad at Wilton, North Dakota, a distance of about three miles, with numerous sidings, which spur has a wye con-

nection with the main track, and desires to operate said spur and perform all freight service for said mine with its own motive power and employees and to transfer in passenger coaches its workmen engaged in the operation of said mine to and from Wilton, and take coal and water for its engine from the railroad's supply at said station, which will necessitate the use of the main track from a point about five hundred feet south of said spur connection to a point about five hundred feet north of the station grounds at Wilton, together with said wye and station sidings. The portion of the main track, wye and station sidings owned by the railroad which the coal company so desires to use are shown in red on the blueprint hereto attached, marked 'Exhibit A,' and made part hereof. The portion of the spur track and sidings owned by the railroad which the coal company so desires to use are shown in brown on said blueprint. The portion of the spur track and sidings immediately connected with the mine and owned by the coal company are shown in green on said blueprint."

The contract provides, among other things:

"I. The railroad grants to the coal company for the term of this agreement the following rights and privileges:

"1. To operate a passenger train with its own engine and crew over said spur track shown in brown on said blueprint and over the main line shown in red on said blueprint for the purpose of transferring its employees to and from work, and also to use so much of said portion of the main track, together with sidings and wye colored red as may be necessary to properly perform such service. * * *

"3. To transfer all freight cars as its business may require between said mine and the sidings of said spur nearest the main track. The railroad will set in empty cars for loading at said mine upon said sidings and take therefrom all loads delivered thereon by the coal company without charge.

"4. The movements of trains, cars or light engines over said tracks shall be under rules and regulations prescribed by the division superintendent of the railroad and all cars handled by the coal company shall be under the master car builders' rules.

"5. The railroad hereby leases to the coal company one standard locomotive engine equipped with a small pilot snow plow and four open platform passenger coaches all in good order for the rental of fifty dol-

lars ($50.00) per day, such rentals to be computed from the time such engine and cars are delivered to the coal company.

"6. Subject to the provisions of article 3 hereof the railroad will maintain that portion of the main track, sidings, wye and mine spur which are to be used jointly by the coal company and the railroad and are shown in red on said blueprint. But the coal company shall pay to the railroad each month during the term of this contract, toward the cost of maintaining the tracks last mentioned colored red and structures connected therewith used jointly by the parties, the sum of twenty-five and 93 hundredths dollars ($25.93). The coal company shall maintain at its own expense the spur track and all sidings connected therewith colored brown and green and extending approximately from a point three hundred feet east of the east headblock of the wye, station 14x35 to the end thereof.

"II. 1. The railroad agrees to furnish to the coal company and the latter agrees to use, an engine and a train crew, all the members of which shall have passed an examination on both mechanical and train rules, for the operation of the locomotive and trains to be operated by the coal company pursuant to this contract. It is expressly understood, however, that such engine and train crews shall be considered employees of the coal company and treated as employees of the coal company for all purposes in the construction and application of article three of this contract, and the coal company shall pay all wages of such engine and train crew."

Article 3, to which reference is made in the last-quoted paragraph, refers to and prescribes the respective obligations and liabilities of the coal company and the railway company with respect to the operation of trains, the maintenance of the roadway and structures, and injuries resulting from the operation of trains. The contract also makes provision for the payment of a stated compensation for the use of the spur track, main track, sidings, wye, and structures belonging to the railway company, and for the payment of bills covering rentals and maintenance.

The Director General contends that, by virtue of the provisions of the contract, the plaintiff became, and at the time of the accident was, an employee of the coal company, and that, as a matter of law, the coal company alone is liable in damages for any injuries he may have sustained. After a careful consideration of this question we have reached the conclusion that the contention cannot be sustained. In other words, we are of the opinion that there is substantial evidence to sustain the

findings of the jury that the plaintiff, at the time of the injury, was an employee of the Director General.

It will be noted that contract was made November 1, 1918. The evidence shows that prior to that date, namely, during the latter part of October, 1918, the plaintiff, at the direction of the proper employees of the Director General, went to Wilton and worked as a fireman on a locomotive doing work for the coal company similar to that which was done by the locomotive which plaintiff was firing on December 25, 1918. There is no direct evidence that the plaintiff was informed of the contract between the coal company and the Director General and the railway company. On the other hand, the plaintiff testified (and the jury found) that he had no knowledge of any such contract; that while he worked at Wilton he supposed he was working for the railway administration, and that he had no idea that he was supposed to be an employee of the coal company. When the plaintiff entered into the employment of the railway administration certain obligations were assumed by both the employer and the employee. It would seem that an employer ought not to be permitted to transfer the employee to another master, and expose him to new risks incident to such new employment, unless the employee either expressly or impliedly consents to enter the new employment, and assumes the risks and obligations incident thereto. And that is the rule established by the authorities. See Bowie v. Coffin Valve Co., 200 Mass. 571, 86 N. E. 914; Del., L. & W. R. Co. v. Hardy, 59 N. J. Law, 35, 34 Atl. 986; 1 Labatt's Master & Servant (2d ed.) § 53, p. 174; note, 37 L. R. A. 47. In Bowie v. Coffin Valve Co., supra, the Supreme Court of Massachusetts said that—

A servant "could not be transferred from one master to another without his consent either expressly given or implied from the nature and character of the work when compared with his ordinary employment." 86 N. E. 915, 200 Mass. 578.

The same principle was enunciated by the Supreme Court of New Jersey in Del., L. & W. R. Co. v. Hardy, supra, in the following language:

"To establish the fact that the servant of one has thus transferred his services to another *pro hac vice,* it must appear that he has assented, expressly or impliedly, to such transfer. No one could transfer the services of his servant to another master without the servant's consent. It must further appear that the servant has, in fact, entered upon the service and submitted himself to the direction and control of the new

master.  His assent may be established by direct proof that he agreed to accept the new master and to submit himself to his control, or by indirect proof of circumstances justifying the inference of such assent. Such evidence may be strong enough to justify a court in removing the question from the jury, or it may require to be submitted to the jury." 59 N. J. Laws, 38, 34 Alt. 987.

In the case at bar the court submitted to the jury the question whether the plaintiff Asch at the time of the accident was working as a locomotive fireman in the course of his original employment.  In other words, the court submitted to the jury for determination as a matter of fact whether the plaintiff had been transferred from his original employment, and had become an employee of the coal company.  And the jury found that he had not been so transferred, but was at the time of the injury working under his employment by the railway administration. As already indicated, there is no evidence that the plaintiff expressly assented to his being transferred to and becoming an employee of the coal company; nor do we believe that the circumstances in the case are such as to establish, as a matter of law, that he impliedly gave his assent to such arrangement.  It is true the evidence shows that plaintiff received some pay checks issued by the coal company.  However, this circumstance alone was not sufficient to put him on notice that he had been transferred to and had become an employee of the coal company.  See Standard Oil Co. v. Anderson, 212 U. S. 215, 225, 29 Sup. Ct. 252, 53 L. ed. 481, 485.  The plaintiff was engaged in his usual line of work. He was firing a locomotive under the control of and operated by the Director General.  He was under the direction of, and his time was taken each day by, a locomotive engineer in the general employment of the Director General.  The locomotive which the plaintiff was firing took all of its water at the water tank of the railway company at Wilton, and all the coal used in operating it was taken from the coal dock of the railway company at the same place.  As breakages occurred the engines were taken to the repair shop of the railway company at Bismarck. In going to Wilton he (plaintiff) went at the direction of the employees of the Director General, and in coming away from there he went in accordance with similar orders.  The coal company had no right to discharge him; his status so far as concerned seniority in the service of the Railroad Administration was in no manner affected by the work he did at Wilton.  In view of all the facts and circumstances, we do not believe

it can be said as a matter of law that the plaintiff assented to a transfer to, and became an employee of, the coal company. We express no opinion as to the respective rights and obligations of the Director General and the coal company as those rights are fixed by the terms of the contract. That is a matter for them, and one which does not concern or affect the rights of the plaintiff in this action.

By their answers to the interrogatories in the special verdict, the jury found that the engineer was guilty of negligence in operating the engine at the speed at which it was being operated at and immediately preceding the time the accident occurred, and that this want of care on the engineer's part contributed to plaintiff's injuries. The jury also found that the plaintiff was not guilty of contributory negligence. In view of the facts and circumstances which the evidence tended to establish, and which have heretofore been alluded to, we are of the opinion that these findings of the jury have substantial support in the evidence. In other words, we are of the opinion that, under the evidence in the case, these were properly questions of fact for the jury.

The defendant coal company contends that the complaint fails to state facts sufficient to constitute a cause of action against it. It does not appear, however, that the question was raised in the court below either by demurrer or otherwise. This contention is based, primarily, upon the proposition that the complaint does not allege that the relation of master and servant existed between the plaintiff and the coal company at the time of the injury, but that, on the contrary, the complaint shows that that relation existed between the plaintiff and the Director General. This contention, in our opinion, is not well founded. While the coal company did not owe the plaintiff the duty which a master owes to a servant, it did owe him the duty to use reasonable care in conducting its operations, so far as they might, with reasonable probability affect others, even though they were not the servants of the coal company. Olson v. Phoenix Mfg. Co. et al., 103 Wis. 337, 79 N. W. 409.

It is undisputed that the plaintiff, at the time of the accident, was in a place where he had a lawful right to be, and was engaged in the performance of work which it was his duty to perform. The coal company knew that at a certain time in the morning of December 25, 1918, a train would come up from Wilton to take the night crew away from the mine. It knew that that train would come over a certain track which was used for that purpose. It is undisputed that the assistant weighmaster

of the coal company, whose duty it was to weigh the loaded cars, permitted certain cars, loaded with coal, to be placed on the track on which the train would come from Wilton to the coal mine that morning. There is no evidence tending to show that the track in question was ever before used for the purpose of placing either loaded or empty cars thereon. On the contrary the evidence shows that the track was not so used, but was used merely for the movement of trains to and from the mine. And the assistant weighmaster frankly admits that the reason the cars were placed where they were was that the brake slipped and the cars went over the switch, and out on the main line. The assistant weighmaster testified that the work done by him in connection with these cars was in his regular line of duty; and it clearly appears from his testimony that the place where the cars were placed was not the usual place to put such cars, and that but for the brake slipping they would not have been placed where they were. He further testified that he notified no one of the fact that the cars had gone out onto the main track, and took no precautions whatever to prevent the accident which subsequently happened, although he knew that the train would arrive in the course of half an hour or an hour after the cars had gone onto the main track. In our opinion, the evidence amply justified the conclusion of the jury that the coal company and its employees were negligent in placing the cars where they were, and also that this negligent act contributed directly to the injury sustained by the plaintiff.

It is next contended that, under the facts in this case, the plaintiff cannot maintain a joint action against the coal company and the Director General, and that the joint verdict against them must be set aside. The claim of the defendants, and especially that of the coal company, as we understand from the argument, is that the defendants cannot be jointly sued for the injury occasioned by the collision unless it is shown that they omitted to perform, or negligently performed, some duty which they were jointly bound to perform, or unless it is shown that they jointly committed some tortious act which resulted in the injury. In our opinion, the contention is not sound, for it is not alone in cases where two or more persons are negligent in the performance of a duty which they jointly owe to another that they become liable, and may be sued jointly for the injury sustained. It is well settled that, where two or more causes join, and by contemporaneous action produce, a single injury, the author of each cause is liable, even though the authors acted

independently of each other. See Shearman & Redfield on the Law of Negligence (6th ed.) § 122; Thompson, Commentaries on the Law of Negligence, § 2781; 22 R. C. L. pp. 128, 129; 33 Cyc. 726; Matthews v. Del., L. & W. R. Co., 56 N. J. Law, 34, 27 Atl. 919, 22 L. R. A. 261; Olson v. Phoenix Mfg. Co., 103 Wis. 337, 79 N. W. 409. See, also, Seckerson v. Sinclair, 24 N. D. 625, 636, 140 N. W. 239, 244; Edwards v. G. N. Ry. Co., 42 N. D. 154, 171 N. W. 873. The rule was well stated by the Supreme Court of New Jersey in the case of Matthews v. Del., L. & W. R. Co., supra. That action was one to recover damages for an injury received in a collision. The plaintiff in the action was a passenger on a street car, and he was injured in a collision between that car and a locomotive belonging to a railroad company. He brought an action against both the street car company and the railroad company. The contention was advanced there, as here, that they could not be jointly sued, for the reason that there was no proof of joint negligence on the part of the defendants. In answering that contention the New Jersey court said:

"If this contention is sound, it is obvious that the declaration was demurrable, for it charged that the railroad company owed to plaintiff a duty to give notice of the passage of its trains across the tracks of the railway company, and that the railway company owed to him a duty to take precautions in carrying him across the tracks of the railroad company, and it averred that each company had neglected to perform the several duties thus charged, and that thereby the collision which injured plaintiff occurred. But the contention is wholly inadmissible, and the declaration would plainly have been good on demurrer. The error arises out of a misconception as to the nature of a joint tort. If two or more persons owe to another the same duty, and by their common neglect of that duty he is injured, doubtless the tort is joint, and upon well-settled principles each, any, or all of the tort-feasors may be held. But when each of two or more persons owe to another a separate duty, which each wrongfully neglects to perform, then, although the duties were diverse and disconnected, and the negligence of each was without concert, if such several neglects concurred and united together in causing injury, the tort is equally joint, and the tort-feasors are subject to a like liability. This doctrine was announced in this court by the chief justice in Newman v. Fowler, 37 N. J. Law, 89. The like doctrine was applied by the court of appeals in New York to a case identical with that under con-

sideration. Colegrove v. New York & N. H. R. Co., 20 N. Y. 492. That case had been mentioned with approval in Barrett v. Third Ave. R. Co., 45 N. Y. 628; Slater v. Mersereau, 64 N. Y. 138; Artic F. Ins. Co. v. Austin, 69 N. Y. 470 (25 Am. Rep. 221). See, also, Cooper v. Eastern Transp. Co., 75 N. Y. 116. The same view is taken in other courts. Wabash, St. L. & P. R. Co. v. Shacklet, 105 Ill. 364 (44 Am. Rep. 791); Union Transit Co. v. Shacklet, 119 Ill. 232, 10 N. E. 896; Carterville v. Cook, 129 Ill. 152, 22 N. E. 14 (4 L. R. A. 721); Cuddy v. Horn, 46 Mich. 596, 10 N. W. 32 (41 Am. Rep. 178)."

Cyc. (33 Cyc. 726, 727) says:

"Where an injury is sustained by reason of the joint or concurrent negligence of two railroad companies or a railroad company and another company or person, plaintiff may sue both jointly, and it is not necessary that there should be a breach of a joint duty or any concerted action on the part of defendants, but it is sufficient if their several acts of negligence concur and unite in producing the injury complained of; nor is it material that one of defendants owed to plaintiff a higher degree of care than the other. So, in case of an injury growing out of a collision, where there was negligence on the part of both defendants, plaintiff may sue jointly, according to the nature of the collision, the two railroad companies, or a railroad company and street railroad company, or a railroad company and a hackman in whose vehicle plaintiff was a passenger. A person injured at a crossing may maintain a joint action against the company owning the road and another using it by its permission, where there was negligence on the part of the gateman of the one and those in charge of the train of the other, or the company owning the road was negligent in not maintaining a flagman at the crossing and the other company in the manner of operating its trains."

The principle stated is applicable here. Under the facts as found by the jury in this case, the injury sustained by the plaintiff resulted from a collision caused by the negligent act of the engineer in the operation of the train, and by the negligent act of the assistant weighmaster of the coal company in placing the loaded cars on the tracks over which he knew the train would come. Neither act, standing alone, but both acts in conjunction, and operating concurrently, caused the injury which the plaintiff sustained.

Error is also predicated upon the court's action in allowing the plaintiff to amend the complaint after the trial had commenced. The

amendments allowed were as follows:

The plaintiff was permitted to add to his allegation as to the injury sustained the following: "And by grievous bodily injuries to his face and other portions of his body"—and to substitute John Barton Payne in place of Walker D. Hines, as Director General. So far as the latter amendment is concerned, the court would take judicial notice that the fact that Walker D. Hines had ceased to be Director General and that John Barton Payne had been appointed as his successor. C. L. 1913, § 7938, subds. 28, 30, 33. Manifestly there could be no prejudice in permitting this amendment to be made. Nor do we believe there was any error in permitting the complaint to be amended as to the extent of the injury received. It is elementary that the allowance of amendments rests largely in the sound, judicial discretion of the trial court, and that its rulings will not be disturbed unless an abuse of discretion appears. No application for a continuance was made, and there is not the slightest indication that the defendants were taken by surprise, or in any manner prejudiced by the allowance of the amendments.

At the commencement of the trial the plaintiff called one Enright, the superintendent of the coal company, for cross-examination under § 7870, which provides that a party to a civil action, or the directors, officers, superintendent, or managing agents of any corporation, which is a party to the record in the action, may be examined upon the trial as if under cross-examination at the instance of the adverse party. Enright testified that he (at the time of the trial) was the superintendent of the defendant coal company. The defendants, however, contend that the plaintiff was not entitled to call him for cross-examination under the statute for the reason that his testimony showed that he was not superintendent at the time the accident in question occurred, and that he, at that time, was merely a traveling salesman for the coal company. We find it wholly unnecessary to determine the question raised, for it developed upon the examination of Enright that he knew nothing about the accident; he was therefore dismissed, and he gave no testimony which could in any manner affect the result of the action. The error, if any, was clearly non-prejudicial.

Error is also predicated upon the admission of the testimony of the plaintiff, Asch, as to what the engineer Johnson said to him upon discovering the box cars, viz.: "Let's get out of here!" It will be noted

from the statement of facts that this statement was made immediately preceding the collision, and at a time when the locomotive was 300 feet or less from the box cars. In our opinion, the evidence was admissible. The statement made by the engineer, according to the testimony of the plaintiff, was a spontaneous utterance, made contemporaneously with the accident. The authorities generally hold such statements admissible as a part of the *res gestae.* See Champlin v. Pawzuteck Valley St. Ry. Co., 33 R. I. 572, 82 Atl. 481; 2 Jones (Horwitz), Commentaries on Evidence, § 344, p. 810 et seq., and authorities collated in notes.

Error is also predicated upon the testimony of the plaintiff as to the ownership of the railway line extending from Wilton to Bismarck. In our opinion the assignment is devoid of merit, for the defendants themselves, as a part of their case, put in full proof regarding the ownership of the tracks and engines, etc., and there was absolutely no conflict in the evidence as regards these matters.

Error is assigned upon the examination of the engineer in charge of the locomotive at the time of the injury. The engineer was called as a witness by the plaintiff. At the time he was called, plaintiff's counsel said:

"I would like to have the record show that we are calling him for certain specific questions and as a witness for the other side."

Defendants' counsel objected to this statement. The court thereupon said to plaintiff's counsel:

"You claim this man is called for cross-examination?"

To which plaintiff's counsel replied in part:

"We know this witness is a witness that has been subpœnaed here by the defendants, and we call him to ask him certain specific questions on the theory that we are making him our witness only on such questions on the direct issues we put to him."

In answer to preliminary questions the witness stated that he had been subpœnaed by the defendants, and had discussed the case slightly with defendants' counsel. We fail to see wherein defendants could have been prejudiced by this procedure.

One Enright, the superintendent of the coal company, was called as a witness for the defendants. He was asked as to who paid the crews operating the trains on the spur between Wilton and the coal mine. An objection interposed by plaintiff's counsel was sustained, and that ruling

is assigned as error. In our opinion the assignment is without merit for two reasons:

(1) On cross-examination conducted by plaintiff's counsel for the purpose of ascertaining the knowledge of the witness as to the matters concerning which he was about to testify, he (Enright) admitted that he did not himself pay the men; that they were not paid through his department; that the only knowledge he had on the subject was by virtue of information received from others, including members of the train crews. He admitted that the plaintiff in this case had never made any statement to him as to who paid him for the services he rendered at Wilton. It seems clear that the testimony sought to be elicited from the witness was not the best evidence, but was hearsay.

(2) Subsequently the defendants were permitted to adduce, and did adduce, other evidence relating to the payment of the crews operating the trains in connection with the mine, and that matter was fully covered by such other evidence. The plaintiff admitted that he had received and cashed certain pay checks, which were admitted in evidence. Such checks were issued by the coal company. Hence the defendants were in no event prejudiced by the exclusion of Enright's testimony. 37 Cyc. p. 1464 et seq.

During the course of the trial the engineer, Johnson, was again called as a witness for the plaintiff, and he testified that, during the time he and the plaintiff, Asch, were at Wilton, namely, between December 18th and December 25th, the locomotive which they operated became incapacitated; that while such locomotive was out of order a freight engine (which pulled the way freight on the main line from Bismarck through Wilton) was detached at Wilton, and such engine, together with the crew thereon, assigned to work on the spur track leading to the mine in place of the engine on which Johnson was engineer and Asch fireman, and that such engine so assigned to work on the spur track continued to do so for a period of some three or four hours, whereupon it went back to its work on the main line of the defendant railway company. It is asserted that the court erred in admitting this evidence. We are of the opinion that the evidence was admissible. As already noted, one of the main contentions of the Director General was that the plaintiff at the time of the injury was an employee of the coal company. This was one of the questions of fact submitted to the jury. A determination of this question in turn involved a consideration of whether the plaintiff gave

his assent, express or implied, to the change of employer. Any fact or circumstance having a logical bearing on this proposition was admissible. And it seems to us that the incident referred to had a tendency to sustain plaintiff's contention that he had no knowledge of the agreement between the Director General and the coal company, and that he never consented to being transferred to and becoming an employee of the coal company.

It is also asserted that the court erred in unduly restricting the cross-examination of the witness Johnson. As already indicated, Johnson was the locomotive engineer. He had been subpœnaed by the defendants. The plaintiff called him as a witness, and interrogated him as to certain matters. We are unable to say that the trial court restricted the cross-examination to such extent as to violate the rules of evidence. It seems to us rather that the court merely limited the cross-examination strictly to the matters inquired into on direct examination, and this, of course, was not error. Jones on Evidence, ¶ 820; Knapp v. Schneider, 24 Wis. 70. But, even if the cross-examination was unduly restricted, the error was fully cured, for the defendants subsequently called Johnson as their own witness, and he was examined and testified fully with respect to the matters sought to be inquired into (and excluded) on his cross-examination. See 38 Cyc. 1466, 1467.

Error is also assigned upon the admission in evidence of the articles of incorporation of the coal company, and a blank used by the engineer in making reports while engaged at work in connection with the mine at Wilton. Little argument is advanced in support of these assignments, and, in our opinion, they are devoid of merit.

There were introduced in evidence in behalf of the plaintiff two X-ray photographs, one of a portion of plaintiff's spine, and the other of one of his feet. The doctor who took these photographs was placed upon the stand as a witness for the plaintiff. After identifying the plates, and stating that they were in the same condition as when they were taken, he was permitted to interpret and explain them. He also was permitted to give his opinion as an expert as to the nature and extent of the injuries as disclosed by such plates. It is contended that the rulings incident to the reception of all of this evidence were erroneous.

While it is argued that the X-ray photographs should not have been admitted in evidence, no error is assigned upon the rulings admitting them; hence defendants are now in no position to argue that these photographs should not have been admitted. We deem it proper to say, how-

ever, that it is not apparent that the trial court erred in admitting the X-ray photographs in evidence. Nor do we believe that the court erred in permitting the doctor to explain the X-ray photographs. One of the photographs showed a dislocation or subluxation of a vertebra. The other showed a fracture of a small bone in one of plaintiff's feet. While it is true the photographs themselves were, and are, the best evidence as to what they show, it is equally true that an X-ray photograph may wholly fail to convey to an ordinary layman the facts as they actually are shown in such photograph. And, we believe that it is proper for an expert to explain an X-ray photograph in particulars that are not understood by a layman. See United R. & Elec. Co. v. Dean, 117 Md. 686, 84 Atl. 75; Bradley v. Inter Railway Co. (Iowa) 183 N. W. 493.

Nor do we believe the court erred in permitting the doctor to give his opinion as an expert as to the nature and extent of the injury, and its probable duration and effect. The authorities generally hold these matters to be a proper subject of expert testimony. The Encyclopedia of Evidence (7 Ency. Ev. p. 399) says:

"For the purpose of arriving at a proper conclusion as to the nature and extent of the injury, and its probable duration and effect, it is proper to receive the opinions of medical experts.."

To the same effect see Rogers on Expert Testimony (2d ed.) p 130; Jones' Blue Book of Evidence, § 378, pp. 929-932.

Error is also predicated upon the admission of the testimony of the plaintiff to the effect that for some six months after the injury he was unable to work, and that from the time of the injury and up to the date of the trial he was suffering with severe headaches, had pains in the back and in the leg, and was nervous. In our opinion this evidence was admissible.

The Encyclopedia of Evidence says:

"It is proper and indeed necessary to inquire into the nature and extent of the injury complained of; and accordingly it is proper to receive evidence as to the physical condition, in respect to health, of the injured person prior and subsequent to the injury; that before the injury the plaintiff was healthy and vigorous, and that in consequence of the injury he suffered pain and disease." 7 Ency. Ev. 383—385.

"The injured person is a competent witness to testify to his feelings, pains and symptoms, as well as to all the characteristics of the injury, internal or external, so far as the same were perceptible to the senses,

and do not require the exercise of scientific skill and knowledge; and indeed it has been held that he is better qualified to testify to such matters than any one else." 7 Ency. Ev. 394—395.

Among the questions submitted in the special verdict were:

"Was the plaintiff, Asch, at the time he received the injuries complained of, guilty of want of ordinary care which contributed to produce the injuries complained of?"

"Were the injuries received by the plaintiff the result of the ordinary risks of his employment?"

In its instructions the court defined the terms "ordinary care" and ordinary risks of the employment," and directed the jury to determine from the evidence in the case whether affirmative or negative answers should be made to the two questions above quoted. It is contended that the court in effect gave general instructions, and also "indirectly advised the jury the effect or result of their answering the questions involved one way or the other." In our opinion the instructions are not objectionable on either ground. No general instructions were given in the case at all. The only instructions given were with reference to the particular questions embraced in the special verdict and propositions incidental thereto. Thus the court instructed as to the rules to be applied in determining the credibility of witnesses, and the weight of evidence, defined the terms "burden of proof" and "preponderance of evidence," and also, as has been indicated, defined the terms "ordinary care" and "ordinary risks of employment." It seems to us that it was not only permissive, but that it was eminently proper, for the court to define these terms in order that the jury might intelligently answer the questions containing them. Horn v. La Crosse Box Co., 131 Wis. 384, 111 N. W. 522; Schroeder v. Wis. Cent. R. Co., 117 Wis. 33, 93 N. W. 837; Banderob v. Wis. Cent. R. Co., 21 S. D. 396, 113 N. W. 738. See, also, Swallow v. First State Bank, 35 N. D. 608, 617, 161 N. W. 207; Nygaard v. N. P. Ry. Co., 178 N. W. 962.

Error is also predicated upon certain statements claimed to have been made by plaintiff's counsel in the closing argument to the jury. It appears from plaintiff's testimony that, upon being taken to the hospital at Bismarck after the injury, he was placed under the care of, and received treatment from, Dr. Ramstad. It, also, appears that immediately prior to or during the course of the trial the trial court, at defendants' request, appointed certain physicians to examine the plaintiff; that Dr.

Ramstad was one of the physicians so appointed, and that he, with the other physicians, examined the plaintiff. In his closing argument plaintiff's counsel commented on the failure of the defendants to call Dr. Ramstad as a witness. Defendants' counsel excepted to this statement. Plaintiff's counsel thereupon stated that he had made the statement in answer to statements made by defendants' counsel during his argument to the jury; that during such argument defendants' counsel had commented on the fact that the plaintiff had failed to call Dr. Ramstad, the doctor who examined plaintiff when he was brought to the hospital, and that he (plaintiff's counsel) therefore, by way of reply to defendants' counsel, called the attention of the jury to the fact that Dr. Ramstad had not been called by the defendants either, although he had been available to them. The trial court thereupon said:

"Gentlemen of the jury, you are instructed by the court to disregard any statement of counsel that is not contained in the evidence. You will remember what the evidence is and be guided solely by the evidence in the case."

We are entirely satisfied that the record so presented to us does not disclose any prejudicial error. See Erickson v. Wiper, 33 N. D. 193, 222, 224, 157 N. W. 592.

The defendant coal company asserts that it is in any event relieved from liability by reason of the fellow-servant doctrine. We find it unnecessary to determine whether that doctrine is applicable where a coal company, incidental to its business, engages in railroading. It is sufficient to say that upon the trial, as well as in this court, the coal company asserted that the plaintiff was not its employee, but the employee of the Railway Administration, and that was the finding of the jury. The duty which the coal company owed to the plaintiff, and the legal rules fixing its liability, have already been alluded to, and need not be restated here.

The defendant coal company also asserts that the verdict is excessive. Reference has already been made to the nature of plaintiff's injuries as disclosed by the evidence. We are of the opinion that the amount fixed by the jury is not so large as to justify this court in interfering therewith.

This disposes of all the errors assigned and argued. It follows from

what has been said that the judgment appealed from must be affirmed. It is so ordered.

GRACE, C. J., and BRONSON, and BIRDZELL, JJ., concur.,

ROBINSON, J., concurs in result.